## PITTSBURG AND SOUTHERN COAL COMPANY *v.* BATES.

**ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.**

No. 3. Argued January 10, 11, 1895. — Decided March 4, 1895.

Coal, shipped by the owners at Pittsburg in their own barges to Baton Rouge for the purpose of being sold there or sent thence to supply orders, and moored at Baton Rouge in the original barges in which it was shipped at Pittsburg, is subject to local taxation there as a stock in trade, and such imposition of a tax violates no provision of the Constitution of the United States.

*Brown* v. *Houston*, 114 U. S., 622, affirmed and applied to this case.

THE Pittsburg and Southern Coal Company, a corporation organized under the laws of Pennsylvania and domiciled in the city of Pittsburg, Pennsylvania, and a citizen of that State, filed its petition in the Seventeenth Judicial District Court of the parish of East Baton Rouge, Louisiana, alleging that the petitioner was and had been for some time engaged in the business of buying and selling coal from the mines in Pennsylvania upon the Mississippi River and other navigable rivers of the country.

That it was the owner of a large number of vessels and barges which it had bought with cargoes of coal, and was

therewith engaged in trade, commerce, and navigation upon the Mississippi River and other navigable rivers of the United States;

That in the course of the trips and voyages of its vessels and barges down the Mississippi River, it was often convenient, advantageous, or necessary that the vessels should be stopped and moored at different places or landings on the Mississippi River, for different periods of time, in the States of Tennessee, Mississippi, Arkansas, and Louisiana pending the arrangements being made by its officers and agents for the reception and disposition of the cargoes of the vessels;

That during the current year it had sent down the Mississippi River a large number of vessels, the property of the petitioner, to supply the trade of Louisiana along the Mississippi and its navigable tributaries, which vessels and cargoes of coal were consigned to Schneidau, the agent of the petitioner in New Orleans;

That the agent, Mr. Schneidau, not having yet made the necessary arrangements to receive and dispose of the cargoes of the vessels at New Orleans or elsewhere, the vessels, being about one hundred in number, were stopped and moored in the Mississippi River at a convenient mooring place about nine miles above the port of Baton Rouge, where they awaited the orders of petitioner's agent, to be thence navigated to such place or places as he might deem convenient or advantageous to the trade in which petitioner was engaged, and the vessels and the cargoes of coal therein were still the property of the petitioner;

That one J. W. Bates, who was the sheriff and *ex officio* tax collector of the parish of East Baton Rouge, had notified the petitioner through said Schneidau, its agent, that it was indebted for state taxes for the year 1887 on movable property (as stock on hand) belonging to the petitioner, as per the assessment rolls and state and parish books of 1887, in the sum of twelve hundred dollars, ($1200,) and threatened, unless the amount was paid within three days, to seize, advertise, and sell movable property of the petitioner sufficient to pay the debt;

And the petitioner was informed, and believed, and so averred, that by the movable property referred to, and designated as "stock in trade," it was intended to describe the cargoes of coal on board the vessels of the petitioner which were moored in the Mississippi River about nine miles above the city of Baton Rouge.

That the tax claimed by Bates, sheriff and *ex officio* tax collector of the parish of East Baton Rouge, was not due or owing by petitioner or by the cargoes of the vessels, and the pretended assessment and tax claimed thereunder were illegal, unconstitutional, null, and void, for the following reasons:

1. That the pretended assessment, under which the tax was claimed, was vague, indefinite, erroneous, and informal, and not such as was required by the laws of Louisiana;

2. That the coal formed the cargoes of vessels owned in Pittsburg, Pennsylvania, and engaged in trade and commerce between different States; was still upon the vessels upon the navigable waters of the United States; had never been landed in the parish of East Baton Rouge or the State of Louisiana; had never been mixed or commingled with the mass of the movable property in that State, and never ceased to be the property of the petitioner;

3. That petitioner was not carrying on any business in the parish of East Baton Rouge; had no agent there; and the coal was not stock in trade on hand, but formed the cargoes of vessels employed in interstate commerce, and lying temporarily off the shore of East Baton Rouge, in the Mississippi River, from whence they would proceed at proper and convenient times to places of final destination;

4. That the tax was in violation of article one, section eight, clause three, of the Constitution of the United States — the clause which provides that Congress shall have power to regulate commerce with foreign nations and among the several States;

5. That it was in violation of article one, section ten, clause two, of the Constitution — the clause which provides that no State shall, without the consent of Congress, lay any imposts or duties except what may be absolutely necessary for executing the inspection laws;

6. That it was in violation of article four, section two, clause one, of the Constitution — the clause which provides that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States;

7. That it was in violation of article one, section nine, clause five, of the Constitution — the clause which declares that no tax or duty shall be laid on articles exported from any State.

The petitioner represented that notwithstanding the illegality, nullity, and unconstitutionality of the assessment and tax, for the reasons given, and numerous other reasons, that J. W. Bates, sheriff and *ex officio* tax collector of the parish of East Baton Rouge, had threatened and intended and would, unless restrained by an injunction, seize, advertise, and sell the vessels of the petitioner and their cargoes of coal or some part thereof, in order to pay the illegal tax; which action of Bates, if permitted, would injure the petitioner in a sum exceeding six thousand dollars, and cause it irreparable injury.

Whereupon the petitioner prayed that a writ of injunction to restrain Bates from thus seizing, advertising, or selling the vessels and coal of the petitioner lying in the Mississippi River, and hereinbefore fully described, in order to pay any tax of 1887, and from in any manner interfering with the property under color of enforcing the alleged tax.

The petition was signed by the attorneys of petitioner, and verified by one of them.

A writ was accordingly issued restraining Bates, the sheriff and *ex officio* tax collector, from seizing or advertising the vessels and coal of the petitioner for the alleged tax.

The sheriff and tax collector appeared in answer to the petition and denied its allegations; admitting, however, that in his capacity as tax collector he had caused the demand to be served upon the agent of the petitioner, and it was his intention, unless restrained by order of the court, to seize and sell the property.

And he averred that the coal was personal, taxable property, belonging to the Pittsburg and Southern Coal Company as "stock in trade," situated in the parish of East

Baton Rouge, and owed the state tax to the State of Louisiana, and was legally assessed according to the laws of the State.

On the trial it was admitted that the property on which the demand was made was on the Mississippi River, in boats of the plaintiff in injunction, which were moored to the shores, the boats being known as coal boats, and that the coal was brought down in them from mines in Pennsylvania, on the navigable streams leading therefrom.

. Mr. Schneidau, the agent of the company, testified that the company was taxed at Pittsburg; that some of the coal moored at Natchez was sold there and some at other points below; that the company sold its coal in different States; that East Baton Rouge was not the final destination of the coal stopped there, but that some of it was there sold; that he had been the agent of the company since December, 1886; that during the whole of that time the company had kept a fleet of canal-boats up the river in this parish — on an average of about fifty boats — averaging about one hundred or more boats and barges; that coal was sold at different times by the company along the river, but that all was sold within the State of Louisiana.

It was admitted that the assessor made the assessment in due form of law, and that the property, consisting of their vessels and coal, had been assessed at $200,000.

The defendant at the hearing of the case, moved that the injunction be dissolved and the suit be dismissed with costs.

And it was contended that the cargoes of vessels owned in Pittsburg, Pennsylvania, and engaged in trade and commerce between different States, were still upon vessels upon the navigable waters of the United States, had never been landed in that parish or in the State of Louisiana, had never been mixed or commingled with the mass of movable property of the State, and had never ceased to be the petitioner's property; that it carried on no business in the parish of East Baton Rouge, had no agent there, and that the coal was not stock on hand in trade, but formed the cargoes of vessels employed in commerce and then lying temporarily off

the shore of Baton Rouge on the Mississippi, whence it would be sent to its final destination, and that the tax violated article one, section eight, clause three, of the Constitution of the United States — the power of Congress to regulate commerce with foreign nations and among the several States — and article one, section ten, clause two, of the Constitution, which declares that no State shall, without the consent of Congress, lay any imposts or duties on imports or exports, and that it was in violation of article four, section two, clause one, of the Constitution — the article which provides that citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States — and of article one, section nine, clause five, of the Constitution, which provides that no tax or duty shall be laid on articles exported from any State.

On the 24th of January, 1888, the court of the Seventeenth Judicial District of East Baton Rouge gave judgment dissolving the injunction in the case, and decreeing that the suit be dismissed at plaintiff's cost, and that the defendant proceed to collect the tax.

From this judgment the Pittsburg and Southern Coal Company appealed to the Supreme Court of the State.

On the 5th of March, 1888, that court affirmed the judgment of the Seventeenth Judicial Court of East Baton Rouge.

From this judgment of affirmance the case was brought to the Supreme Court of the United States by the plaintiff in the original suit on writ of error.

*Mr. W. S. Benedict* and *Mr. George A. King*, (with whom was *Mr. Charles W. Hornor* on the brief,) for plaintiff in error.

In *Brown* v. *Houston*, 114 U. S. 622, it was held that coal mined in Pennsylvania and sent by water to New Orleans to be sold in open market there on account of the owners in Pennsylvania, becomes intermingled, on arrival there, with the general property in the State of Louisiana, and is subject to

taxation under general laws of that State, although it may be, after arrival, sold from the vessel on which the transportation was made, and without being landed, and for the purpose of being taken out of the country on a vessel bound to a foreign port.

We urge as reasons for regarding *Brown* v. *Houston* as inapplicable to control the determination of the present case:

1. That in this case the coal had not reached New Orleans, the port of destination, but was still on the Mississippi River, nine miles above Baton Rouge, and in actual course of transit.

2. Because *Brown* v. *Houston* has been in effect overruled by more recent decisions of this court.

As to the first of these grounds it will be observed from the testimony that the company had but one office in the State of Louisiana, and that was situated in the city of New Orleans. In the progress of the coal from Pittsburg down the Ohio and Mississippi Rivers it passed through numerous States, and usually tied up at night. It would be sold at any point in the different States as brought down to any person applying for it. It would hardly be claimed, we think, that the fact that the coal was liable to be sold at any point where it happened to tie up for the night, subjected the whole of it to liability for tax in any or all the half dozen States through which it passed in its course from Pittsburg to New Orleans. If not, why should it be subject to tax in the parish of East Baton Rouge almost as soon as it arrived in the State of Louisiana, and before reaching its destination at New Orleans? Surely, on the most liberal view of the taxing power of the State, the power to tax that which is brought in from another State cannot begin until the goods have reached their actual destination and place of rest within the State to which brought, even though a portion of them may be liable to be sold in the meantime.

We do not, however, place our main reliance for a reversal of the judgment in this case upon this ground.

Our principal ground for urging a reversal is that *Brown* v. *Houston*, 114 U. S. 622, in which a tax imposed under similar, if not in all respects identical, circumstances was sustained,

can no longer be regarded as the law of this court in the light
of more recent decisions, particularly that in *Leisy* v. *Hardin*,
135 U. S. 100. In that case the whole subject of the power
and jurisdiction of the States over property brought in from
other States in the course of interstate commerce was exam-
ined, and the power of the State in that respect redefined,
overruling expressly some, and impliedly others, of the prior
decisions of this court.

*Mr. M. J. Cunningham*, Attorney General of the State of
Louisiana, for defendant in error.

MR. JUSTICE FIELD, after stating the case, delivered the
opinion of the court.

The plaintiff company in this court objects to the judgment
of the Supreme Court of Louisiana dissolving the injunction
in the original suit which inhibited the state tax collector
from selling coal lying in boats on the Mississippi River to
pay taxes alleged to be due to the State thereon, and direct-
ing that the defendant proceed to collect the tax.

It is contended that the law under which the sheriff and
tax collector assumed to act exempted the coal from taxation
as property in process of transportation and not on consign-
ment for sale. Such would seem to be the direct declara-
tion of the law of Louisiana. And independently of that
direction such would seem to be the import of the decision
of this court in *Brown* v. *Houston*, 114 U. S. 622. That case
resembles, in important features, the present one. It was
brought by the plaintiff in error in the Civil District Court
for the parish of Orleans in the State of Louisiana in Decem-
ber, 1880, to enjoin the state tax collector from seizing and
selling a certain lot of coal belonging to the plaintiff situated
in New Orleans. They alleged that they were residents and
did business in Pittsburg, Pennsylvania; that the state tax
collector had officially notified their agents that they were
indebted to the State of Louisiana in the sum of three hun-
dred and fifty-two dollars and eighty cents, state tax for the
year 1880, upon a certain lot of Pittsburg coal assessed as

their property and valued at fifty-eight thousand and eight hundred dollars; that they were delinquent for the tax to the tax collector, who was about to seize, advertise, and sell the coal to pay the tax.

They alleged that they were not indebted to the State of Louisiana for the tax, and that they were the sole owners of the coal and were not liable for any tax thereon, having paid all taxes legally due for the year 1880 on the coal in Pennsylvania, and that the coal was simply under the care of their agents, Brown and Jones, in New Orleans, for sale.

They further alleged that the coal was mined in Pennsylvania and was from that State imported into the State of Louisiana, as their property, and was then and had always remained in its original condition, and never had become mixed or incorporated with other property in that State. That when the assessment was made the coal was afloat on the Mississippi River, in the parish of Orleans, in the original condition in which it was exported from Pennsylvania, and that the agents notified the board of assessors of the parish that the coal did not belong to them, but to the plaintiffs, and was held as stated, and was not subject to taxation; and they protested against the assessment for that purpose.

The tax collector notified the agents of the plaintiffs that in conformity with provisions of the law of 1880 the state tax assessed to them on movable property in the parish, which amounted to the sum of three hundred and fifty-two dollars and eighty cents, fell due and should have been paid before the first day of the current month; that they had become delinquent for the tax on the first day of December, and that after the expiration of twenty days he, as tax collector, would advertise for sale the movable property upon which the taxes were due, in the manner provided by law for judicial sales, when he would sell such portion of the property for cash, and without appraisement, as they should point out and deliver to him, and in case they did not point out and deliver to him sufficient property, that he would sell, without appraisement, the least quantity of the movable property which any bidder would buy for the amount of the taxes assessed.

The defendant answered with a general denial, admitting the assessment of the taxes and his intention to sell the property for its payment.

Witnesses were produced to sustain the allegations of the petition.

One of the witnesses testified that he was the general agent and manager of the business of Brown and Jones, of New Orleans, and that when the assessment complained of was made the firm had paid the state taxes due upon their capital stock and had paid state and city licenses to do business for that year. That at the time of assessment of the tax the coal upon which it was levied was in the hands of Brown and Jones, as agents of the plaintiffs, for sale, having just arrived from Pittsburg, Pennsylvania, by flatboats, and was in the boats in which it had arrived and afloat on the Mississippi River. That it was held by Brown and Jones to be sold for the account of plaintiffs by the boat load, and that since that time more than one-half of it had been exported from the country on foreign steamships and the balance sold in the interior of the State for plantation use, by the flatboat load.

One of the plaintiffs testified that they were the owners of the coal in question; that it was mined in Allegheny County, Pennsylvania; that the tax of two or more mills was paid on it in Pennsylvania, as a state tax thereon in 1880, and that a tax was also paid in the county of Allegheny in the year 1880; that it was shipped from Pittsburg, Pennsylvania, in 1880, and was received in New Orleans in its original condition and its original packages, and was still owned by the plaintiffs.

The Louisiana statute of April 9, 1880, under which the assessment was made provided :

That in the calendar year 1880, and for every succeeding calendar year, there should be levied, annually, taxes amounting in the aggregate to six mills on the dollar of the assessed valuation to be made on all property situated within the State of Louisiana, except such as was expressly exempted from taxation.

Exemptions from taxation, under the constitution of Louisiana, did not affect the question considered, and upon the case

as thus made the District Court of the parish dissolved the injunction and dismissed the suit. On appeal to the Supreme Court of the State the judgment was affirmed, and it came to this court on writ of error.

The errors assigned were that the tax in question violated article 4, section 2, clause 1 of the Federal Constitution; and article 1, section 8, clause 3, and article 1, section 10, clause 2 of the same instrument. The clauses therein referred to were:

1. That the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States;

2. That the Congress shall have the power to regulate commerce with foreign nations and among the several States, and with the Indian tribes; and,

3. That no State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws.

In considering the questions presented the court observed that it was decided in the case of *Woodruff* v. *Parham*, 8 Wall. 123, that the term "imports" as used in that clause of the Constitution which declares that "no State shall, without the consent of Congress, lay any imposts or duties on imports or exports," does not refer to articles carried from one State to another, but only to articles imported from foreign countries into the United States, and therefore it was not necessary to · consider the questions thus raised, and which were based upon the assumption that the tax complained of was an impost or duty upon imports.

The power to regulate commerce among the several States was granted to Congress in terms as absolute as is the power to regulate commerce with foreign nations. If not in all respects an exclusive power, if, in the absence of Congressional action the States may continue to regulate matters of local interest only incidentally affecting foreign and interstate commerce, such as pilots, wharves, harbors, roads, bridges, tolls, freights, etc., still, according to the rule laid down in *Cooley* v. *Board of Wardens of Philadelphia*, 12 How. 299, 319, the power of Congress is exclusive wherever the matter is national in its character or admits of one uniform system or plan of

regulation, and is certainly so far exclusive that no State has power to make any law or regulation which will affect the free and unrestrained intercourse and trade between the States, as Congress has left it, or which will impose any discriminating burden or tax upon the citizens or products of other States coming or brought within its jurisdiction.

. So long as Congress does not pass any law to regulate commerce among the several States it thereby indicates its will that commerce shall be free, and any regulation upon the subject by the States is repugnant to such freedom. Thus, as observed Mr. Justice Strong: "It seems hardly necessary to argue at length that, unless the statute can be justified, as a legitimate exercise of the police power of the State, it is an usurpation of the power vested exclusively in Congress. It is a plain regulation of interstate commerce, a regulation extending to prohibition. Whatever may be the power of a State over commerce that is completely internal, it can no more prohibit or regulate that which is interstate than it can that which is with foreign nations."

Such being the recognized law, the question arose before the court in the case of *Brown* v. *Houston*, whether the assessment of the tax upon the coal in question in the barges afloat amounted to any interference with or restriction upon the free introduction of the plaintiffs' coal from the State of Pennsylvania to the State of Louisiana. In other words, whether the tax amounted to a regulation or restriction upon commerce of the States, or only to the exercise of local administration under the general taxing power, which, though it may incidentally affect the subjects of commerce, is entirely within the power of the State until Congress shall see fit to interfere and make express regulations on the subject, and that is one of the precise questions in the present case. And it was held that as to the character and mode of the assessment it was not a tax imposed upon the coal as a foreign produce, or as the product of another State than Louisiana, nor a tax imposed by reason of the coal being imported or brought into Louisiana, nor a tax imposed whilst it was in a state of transit through that State to some other place of destination. It was imposed after the

coal had arrived at its destination and was put up for sale. The coal had come to its place of rest, for final disposal or use, and was a commodity in the market of New Orleans. It might continue in that condition for a year or two years, or only for a day. It had become a part of the general mass of property in the State, and as such it was taxable for the current year as all other property in the city of New Orleans was taxable. Under the law it could not be taxed again until the following year. It was subjected to no discrimination in favor of goods which were the product of Louisiana. It was treated exactly in the same manner as such goods were treated.

And the court held that it could not be seriously contended, at least in the absence of any congressional legislation to the contrary, that goods which are the product of other States are to be free from taxation in the State to which they might be carried for use or sale. And it may be added that the correct rule is for the assessor or tax collector to assess all property found within his jurisdiction, being there for the purpose of remaining till used or sold, and constituting part of the great mass of the general property of the country, provided always that the assessment does not discriminate between the products of different States.

And the court further observed that it saw no conflict in that case, either in the law itself or in the proceedings which had been had under it and sustained by the state tribunals, nor any conflict with the general rule that a State cannot pass a law which shall interfere with the unrestricted freedom of commerce between the States.

The decision of the court in *Brown* v. *Houston,* thus rendered, seems to be conclusive of the case now before the court. The property in this case, as in that, still belongs to the original owners in Pennsylvania, but is brought on the navigable waters of the United States in boats and barges to Louisiana for purposes of sale, and is subject to taxation and sale as any other property of the citizens of the United States is subject when it becomes incorporated into the bulk of the property of the country, unless there be some special exemption set forth why it should not be thus taxed and sold, of which there is none here.                    *Judgment affirmed.*