### OLIVER FINNEY GROCERY CO. v. SPEED et al.

(Circuit Court, W. D. Tennessee. March 26, 1898.)

1. CONSTITUTIONAL LAW—STATE TAXATION—INTERSTATE COMMERCE.

The revenue law of Tennessee of 1897 (chapter 1), imposing upon all merchants an "ad valorem tax upon the capital invested in their business equal to that levied upon taxable property," and which provides that the amount assessed against the merchant shall not be less than the average of his stock during the preceding year, to be ascertained by adding together the highest and lowest amounts of stock on hand at any time, and dividing the sum by 2, is not a tax upon the goods, and not an interference with interstate commerce.

2. SAME—PRIVILEGE TAX.

The privilege tax also imposed on merchants by chapter 2 of the act, to the extent of 15 cents "on each $100 worth of taxable property," is not an interference with interstate commerce.

This was a suit in equity by the Oliver Finney Grocery Company against R. A. Speed and others. The cause was heard on an application for a temporary restraining order.

Henry Craft, for complainant.

Geo. B. Peters, C. D. M. Green, and W. B. Eldridge, for defendants.

HAMMOND, J. The application for a temporary restraining order until the motion for a preliminary injunction can be heard must be

refused. The bill seeks to raise the question whether or not a "license" or "privilege" tax levied upon a merchant importing goods from other states and foreign countries for sale in this state in original packages is in violation of the constitution of the United States, as an impost or duty upon imports. or it is a regulation of foreign or interstate commerce forbidden to the states. But, in my judgment, this question is not presented by the facts of this case, since the Tennessee act for the assessment and collection of revenue for the state for county and municipal purposes, of April 30, 1897 (chapter 1), and its companion act, to provide revenue for the state (chapter 2, pp. 1–50. Pub. Acts 1897), do not levy a license or privilege tax, at least not to the extent claimed by this bill. Neither is the tax complained of a direct or an indirect impost upon the goods so imported, in any sense whatever. It is for the most part simply a tax upon the capital of the "merchant," the defendant company in this case, employed in the business in which it is engaged, namely, that of buying and selling interstate, domestic, and foreign merchandise. The revenue act does provide for a privilege tax of 15 cents on each $100 "of taxable property." But the bill, as drawn, makes no separation or distinction between this part of the tax and the 40 cents on the $100 "upon the average capital invested" of the main tax increased by a subsequent act of April 10, 1897 (chapter 3, p. 81, Pub. Acts), to 45 cents, if that act applies to this tax at all. Neither does the bill show any separation or distinction, in the levies made and complained of by the bill, between the amount of taxes claimed upon foreign and interstate merchandise and those claimed upon mere domestic merchandise. It is true, the bill shows that a return for taxation or assessment was made only of domestic goods as to which the taxes were paid; but the increased assessment made by the taxing officials under the authority of these acts, as presented by the bill, takes no note of either of the above distinctions, and the levy seems to have been made in a lump sum upon assessments, so far as we can see from the bill, wholly ignoring these distinctions. Therefore, in the present condition of the bill, it would be impossible to consider any differences of legal right to the tax based on these distinctions if any such differences there be. The bill quotes so much of the legislation as was deemed necessary to present the question made by the bill, commencing with section 19 of the assessment act; but its proper construction requires a full reading of all the sections of both of the acts, to develop the scheme of taxation contained in them, and from this it abundantly appears that it is an entire misapprehension of their effect to suppose that the assessment complained of in this bill is wholly either a "license" tax or a "privilege" tax upon the importer, or a direct or indirect tax upon the goods imported. Forty-five per cent. of it is "an ad valorem tax upon the capital invested in their business," levied upon "merchants" by section 18 of the assessment act (chapter 1, p. 15), and section 3 of the revenue act (chapter 2, p. 50), as increased by the supplemental act (chapter 3, p. 81), if this increase applies to the "merchant's tax." It is perhaps a misnomer to call it an "ad valorem tax," but that is not material. The confusion arises out of the peculiar process provided in the act for levying the merchant's tax.

As before stated, it does impose a privilege tax upon merchants, which is measured in the same way as the so-called "ad valorem tax" upon capital, namely, by a percentage upon the capital or property, whichever is used as a basis of computation.    But in order to secure this tax, both as to the assessment and collection, the act requires "merchants" to be licensed as other privileged occupations are to be licensed, and seemingly the same protection is extended by the act to the tax upon the merchant's capital as that upon his privilege.  But, manifestly, the tax upon the capital does not thereby become a privilege or license tax; the separation between the two, both in the levy and assessment of the tax, being carefully provided for by the act.

. Section 1 of the assessment act declares that all property, real, personal, and mixed, shall be assessed for taxation.    Section 2 declares exemptions, and section 3 provides that the assessment for all purposes, of personal property, privileges, and polls, shall be assessed annually, and real estate every four years.    Section 7 provides that personal property shall be assessed under enumerated heads, including "(2) stocks of merchandise, wares, goods, and chattels, kept on hand, or in store, for sale, trade or traffic; but the value of the same shall not be included in the tax values," etc.    The act then proceeds to direct how assessments shall be made, seriatim, under these various heads, numbering 11.    It reaches "merchants" at section 18, thus:

"That merchants shall pay an ad valorem tax upon the capital invested in their business, equal to that levied upon taxable·property; and the term 'merchant' as used in this act includes all persons, copartnerships or corporations engaged in trading or dealing in any kind of goods, wares, merchandise, either on land or in steamboats, wharf-boats or other craft, stationed or plying in the waters of the state, and confectioners, and whether such goods, wares, and merchandise be kept on hand for sale or the same be purchased and delivered for profit, as ordered; but nothing in this act contained shall in any way affect the collection of privilege taxes upon the avocations declared by this act to be privileges."

Then follow sections 19 et seq., as quoted in the bill, and they need not be quoted here.    Section 19 and those following are designed to regulate the assessment and collection of license and privilege taxes, but they include also a regulation for the assessment and collection of the "merchant's capital tax" provided for in section 18, as above quoted; plainly because the merchant is paying both a capital tax and a privilege tax, each being ascertained by the same method of procedure.    This bill gratuitously assumes that it is all a privilege or license tax.    The scheme seems to be that the merchant's capital tax assessed shall be levied upon his own return by a true statement under oath "of the amount of capital invested in such business, during said twelve months" (section 20); and "levied the amount of capital invested in his business to be assessed for taxation" (section 22, subsec. 1).

It is to be noted that this is not at all a tax upon the goods or their value, but upon the amount of the capital, as shown by the merchant under oath.    It is entirely true that subsection 1 of section 22, in order to checkmate any underassessment by the merchants under their statement of the amount of capital invested in the business,

declares that under no circumstances shall the amount to be assessed against the merchant be less than the average value of the amount of stock on hand during the preceding year, which average amount is to be ascertained by adding together the highest and lowest amount of stock on hand at any one time, respectively, during the year, and dividing the aggregate by two, which average amount "shall be deemed the taxable value of the capital of such merchant, upon which he shall pay the taxes levied for state, county, and municipal purposes. It is also true that, in a subsequent requirement of section 22, the clerk of the court and the district attorney are authorized, upon citation and notice, to correct any untrue statement made by the merchant under oath where it is considered not just and correct by the clerk, so as to conform the assessment to the facts, and to truly ascertain the capital, as defined in subsection 1, § 22, above quoted. But it is obvious from these provisions and the whole act that no assessment is made upon the goods directly or indirectly, either by way of import tax or otherwise, and that this valuation of the stock on hand to ascertain the average capital is only a method of determining the amount of capital that the merchant has invested in his business for taxation, whenever it becomes necessary to ascertain it otherwise than by his own sworn statement of that amount. If his own statement is satisfactory to the officers, there may be no valuation of the goods at all, for it is only in the event of a disagreement between them that it is necessary to make this valuation. Of course, the merchant, in making his sworn statement of the capital he has invested in the business, may adopt the rule of the statute for ascertaining it, but he is required to make a true statement, irrespective of that rule. Besides, it is directly provided in subsection 2, § 22, that if the average stock on hand, ascertained by the valuation of the highest and lowest quantity during the year, and dividing by two, shall be less than the capital stock invested, the merchant shall pay on the capital stock, and not on the lesser valuation. It is also provided by that subsection that "the word 'capital,' as used in this and the foregoing section, shall be construed to mean the average amount of stock on hand during the year in which it was offered for sale, the amount to be ascertained as provided in the first section hereof." So that it is wholly a misapprehension of the bill in this case to treat this scheme of taxation as one levied directly or indirectly upon the goods. The valuation made of them is only for the purpose of fixing under certain circumstances the amount of the capital stock for taxation, and the legislature might have resorted to any other convenient method of determining that amount in the event the taxing officers were not satisfied with the sworn statement of the merchant. They might have directed that it should be ascertained by summing up the amount due or paid on the invoices of the purchaser of the goods, or, as is done in cases of insurance, by taking the amount of the sales, and deducting the profits, or by any other convenient and just method of determining the amount of money which the citizen engaged in the business of selling merchandise has invested in that business.

That this is a proper construction of the act, and that this method of a special assessment upon merchants by segregating their mer-

chandise from their other property is intended, is shown by subdivision 2 of section 7 of the assessment act, which says distinctly that stocks of merchandise shall not be included in the tax values assessed on other personal property, this evidently being reserved for the special methods of assessment and collection subsequently provided for in the section already noticed. And there are other indications not necessary to note, all through the act, showing that this is a tax upon the capital of the merchant invested in his business, and not in any sense a tax upon the goods on hand or their value, either directly or indirectly; and the argument used to convert it into a tax upon goods imported from another state or foreign countries might just as well be used to resist the poll tax, as being also a tax upon the importations, because it is a tax upon the person of one engaged in the business of an importer. This is a tax upon capital engaged in the business of merchandising, and there is not a line in the whole act which in any sense makes any discrimination in the process between capital invested in foreign or interstate transactions and that invested in domestic transactions in this process of taxation. As before stated, the merchant is required to take out a license, and to conform to certain provisions about giving bond and securing the proper assessment and collection of his merchant taxes, in a similar manner to that required of those who are engaged in the occupations which are denominated "privileges," and taxed only as such; and by section 3 of the revenue act (chapter 2, p. 50), when the legislature comes to fix the rate of taxation, a merchant is taxed 40 cents on the $100, as "an ad valorem tax upon the average capital invested in his business," and he is also taxed 15 cents on each $100 of "taxable property." Whatever that may mean, whether on his taxable merchant's capital, or on that and all his other taxable property, we need not here inquire. While this is called a "privilege tax," and the amount is ascertained by computation of a percentage upon the taxable property precisely as the 40 cents is ascertained, by computation on "taxable capital," it is really an arbitrary tax levied upon the business of the merchant, without any discrimination as to the character of the business in which he is engaged as between domestic and foreign or interstate goods or transactions. As before stated, this bill only shows that a large lump sum has been assessed upon the plaintiff in this case, and it discloses or complains of no distinction between anything which may have been assessed as privilege taxes and that which may have been assessed as taxes upon the merchant's capital, so that we do not now know what the facts may be in relation to that assessment; but certainly the whole tax should not be enjoined because a part of it might be unlawful, while the illegality does not appear upon the bill as it is now drawn, even if it be conceded that a privilege tax, however the amount may be fixed, which is levied upon a merchant engaged in the importation of foreign or interstate goods, is a tax upon interstate commerce, which the court is not now at all prepared to admit. Therefore this application for a restraining order and a preliminary injunction must be denied upon the construction of the act itself, the tax assessed and levied being, as appears by the bill, only a tax upon the capital of the merchant which is invested

in his business, and not a tax upon interstate or foreign commerce, nor a restriction or a discrimination against the commerce.

It would not be improper, however, to say a word as to the argument made upon the adjudications of the supreme court of the United States which are supposed to avoid this tax if it could be construed to be a tax upon imported goods from foreign countries and other states, directly or indirectly, as a license or privilege tax. The argument made in the brief of counsel assumes that the case of Woodruff v. Parham, 8 Wall. 123, has been overruled by the case of Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681. This latter case was not one involving the question of taxation at all, and, even in its relation to the exercise of the police power of a state over articles of interstate commerce, it has been said in the subsequent case of Plumley v. Massachusetts, 155 U. S. 461, 474, 15 Sup. Ct. 154, that that case must be restrained in its application to the case actually presented for determination; and it is very doubtful if it may be used, as is sought to be done in this case, to maintain the broad position that all articles of imported goods, while remaining in the original packages, are exempt from taxation, direct or indirect, for that is what this bill means in its contentions. It is still more doubtful if that principle can be held to have been established by that case in the light of the subsequent cases of Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. 367, Coal Co. v. Bates, 156 U. S. 577, 15 Sup. Ct. 415, and Coal Co. v. Louisiana, 156 U. S. 590, 15 Sup. Ct. 459, in which the cases of Leisy v. Hardin, supra, Woodruff v. Parham, supra, Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091, Brown v. Maryland, 12 Wheat. 419, and many of the other cases relied upon by plaintiff's counsel in this case, are cited by the court; and there is no intimation that the case of Woodruff v. Parham, supra, is regarded by that court as having been overruled. In Emert v. Missouri, supra, it was distinctly held that a statute of a state by which peddlers were required, under a penalty, to take out and pay for licenses, making no discrimination between residents or products of the taxing state and those of other states, is not repugnant to the constitution of the United States. And in Coal Co. v. Bates, supra, it was held that a tax upon coal in the original barges, in which it was shipped from one state to another, was subject to local taxation in the state where it was found; and in neither of these last-cited cases was there any dissent among the judges who differed so widely in Leisy v. Hardin, supra, and Plumley v. Massachusetts, supra, showing that it was not considered by the court that Leisy v. Hardin applied to the cases of taxation of imported goods held in their original packages unsold. In the cases involving the power of taxation, the determination of the question of legality or illegality as affected by the interstate commerce clause of the federal constitution seems to depend largely upon the question of unjust discrimination between the products of the taxing state and the products of other states introduced by importation; and it is conceded by the brief of counsel in this case that no such discrimination has been made by the acts of the Tennessee legislature we have now under consideration. It is not necessary, in my judgment, to give any technical attention to any of these decisions, for the reason that it ap-

pears upon the face of the bill and the acts of the legislature that the taxes assessed and levied are not assessed and levied upon the imported goods directly, indirectly, or remotely in any legal sense, but are "a valid exercise of the power of the state over persons and business within its borders," to use the concluding language of Mr. Justice Gray in the case of Emert v. Missouri, supra. Application denied.

## Addendum.

The bill as amended sets out section 3 of the act of 1897 (chapter 2, known as the "Revenue Act,") levying a privilege tax on merchants of 15 cents "on each one hundred dollars worth of taxable property," etc. And it claims that, at least as to this "privilege tax," the act is obnoxious to the federal constitution, as a tax or restriction on interstate commerce. But I do not think so. There is in the act no possible discrimination as against that kind of commerce. The computation for the privilege tax is not made on the values of interstate articles of commerce more than on the values of domestic articles of commerce, nor on the capital invested in one more than on the capital invested in the other. In my judgment, it is not levied on either, as goods or as commerce, but, like a poll tax, is levied on the persons engaged in the business of merchandising for the privilege of exercising the vocation of a merchant, not that of an importer or dealer in interstate or foreign merchandise, but upon all domestic dealers as well. Section 18 of the assessment act declares in terms that it is a tax on the vocation. The amount assessed for this privilege varies according to the amount of the dealings as shown by the "worth of taxable property"; whether of all the merchant's taxable property, real, personal, and mixed, or only that known in the act as "merchant's capital," we need not say. Certainly, it is not levied alone on interstate commerce articles or dealers, and, as before suggested, is not more a tax on interstate commerce than a poll tax on the merchant might be.

In the case of Robbins v. Taxing Dist., 120 U. S. 496, 7 Sup. Ct. 592, it is remarked that the mere calling the business of a drummer a "privilege" cannot make it so. So, the mere calling a tax a "privilege tax," or declaring an occupation a privilege, cannot make it an unlawful tax on interstate commerce, if in fact that kind of commerce be not especially burdened or injured or restricted by it in favor of domestic commerce, where it has no unfavorably discriminating quality against the citizens or products of other states. As said in Freight Tax Case, 15 Wall. 232, the constitutionality or unconstitutionality of a state tax is to be determined, not by the form or agency through which it is to be collected, but by the subject upon which the burden is laid,—the ultimate burden. Here it is not laid on the importations of the plaintiff, but upon all its property, of every kind, possibly if we look only to the mere form of words in making the levy, and certainly so if we look only to ultimate results; for it is an amount to be paid out of its general funds, and surely not out of the proceeds of importations more than out of any other class of merchandise or other property whatever. If we look only at the

person paying the privilege tax, or at the occupation of that person, it is not levied on an importer qua importer, as in the Robbins Case, supra, but upon every one alike engaged in that occupation of buying and selling goods of each and every kind, foreign and domestic. It can be held a tax on importations from other states only by holding to the broad proposition that there is a sanctity about imported articles exempting them from all taxation, whether equally with domestic articles or differently from them by an inequality, arising out of unfair discrimination against importations and importers. No case has held to such a proposition.

In Emert v. Missouri, supra, this construction of the Robbins Case is denied, and upon the force of language quoted from that case itself, as follows:

"When goods are sent from one state to another for sale, or in consequence of a sale, they become part of the general property, and amenable to its laws: provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way as other goods are."

Here they are taxed in the remotest way, incidentally, if at all, and not in the least unlike all other goods are taxed belonging to the merchant, nor indeed not unlike all his other taxable property, of whatever kind, for that seems to be the burden of the statute. And it is said in Coal Co. v. Bates, supra, that it cannot be seriously contended, at least in the absence of congressional legislation to the contrary, that goods which are the products of other states are to be free from taxation in the state to which they might be carried for use or sale; provided, always, that the assessment does not discriminate between the products of different states. The application for a temporary restraining order and for a preliminary injunction are denied, both upon the original and the amended bill. Ordered accordingly.