BOYD et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. July 7, 1921.)

No. 1897.

1. Commerce ⬥33—Interstate shipment remains such until delivered by carrier to consignee.

When a shipper delivers property to a carrier on a contract for carriage and delivery to a consignee in another state, the property remains under the protection of the federal statutes regulating interstate commerce until it is lawfully surrendered to the consignee or his assignee.

2. Commerce ⬥33—Interstate shipment to order held not delivered by carrier.

The placing by a terminal company of a car containing an interstate shipment, under an order bill of lading, on its side track to the warehouse of ᴛʜᴇ consignee, but without surrendering possession to the consignee, held not a delivery which took the shipment out of interstate commerce.

3. Carriers ⬥38—That a fraud was committed by defendant in the name of a corporation in obtaining delivery of car not a defense.

That defendant in obtaining delivery of a car of grain from a railroad company by fraud and deception acted in the name and for the beneut of a corporation of which he was the principal owner held not a defense, but to render both defendant and the corporation chargeable.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Criminal prosecution by the United States against Charles F. Boyd and the Charles F. Boyd Company, Inc. Judgment of conviction and defendants bring error. Affirmed.

H. L. Erckman, of Charleston, S. C., for plaintiffs in error.

J. Waties Waring, Asst. U. S. Atty, of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

WOODS, Circuit Judge. Each of the counts 1 to 5 of the indictment charged a separate offense of obtaining by fraud and deception a carload of corn or hay, moving as an interstate shipment, in the custody of the Southern Railway at Charleston, S. C. Of these charges

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the defendants were acquitted. They were convicted on count 6, which charged that the defendants obtained at Charleston, S. C., on June 29, 1920, by fraud and deception, a carload of corn moving as an interstate shipment of freight, in the custody of the Charleston Terminal Company. The details are thus set out:

" * * * Which said corn was then moving as an interstate shipment of freight, from Williamsburg Station, in the state of Maryland, to Charleston, in the state of South Carolina, which said shipment had not been paid for and was a shipment commonly known as an order notify shipment; and they, the said Charles Frederick Boyd and Charles F. Boyd Company, Incorporated, did then and there represent to the Charleston Terminal Company that they were unable to obtain the bill of lading covering the said shipment of corn so as to surrender the same to the said Charleston Terminal Company in order to obtain the said shipment of corn, and in lieu thereof did then and there file with the said Charleston Terminal Company a certified statement of the invoice price of the said shipment of corn, which said certified statement showed the said invoice price to be $2,346.62, and thereupon did deposit with the said Charleston Terminal Company a check to cover the said amount, and in pursuance thereof did obtain the said shipment of corn, as aforesaid, which aforesaid certified statement was false, in that the invoice price of the said shipment of corn was not $2,346.62, as so falsely certified by the said Charles Frederick Boyd and Charles F. Boyd Company, Incorporated, but in truth and in fact the invoice price of the said shipment was $3,627.36, all of which was then and there well known to them, the said Charles Frederick Boyd and Charles F. Boyd, Incorporated. * * *"

The first assignment of error is directed to the refusal to direct a verdict of acquittal on the ground that the evidence does not show that the carload of corn was moving as an interstate shipment of freight at the time the defendants obtained it from the Charleston Terminal Company.

Three interstate railroads, the Atlantic Coast Line, the Southern, and the Seaboard, run into Charleston. The Charleston Terminal Company is a separate corporation, with a track along the docks. The Terminal Company has a number of spur tracks to the warehouses of wholesale dealers. It receives cars from the three railroads, and delivers them to the dealers at their warehouses. The rules of all the carriers require that a car containing an order notify shipment shall not be delivered to the merchant for whom it is intended until the bill of lading indorsed by the shipper has been surrendered either to the railroad or to the Terminal Company. The bills of lading with the drafts attached were sometimes delayed in transmission to the Charleston banks. When this happened, for the accommodation of the merchants, the railroads and the Terminal Company allowed the merchants to obtain the goods by depositing the amount of the invoice, plus 10 per cent. as security against the irregular delivery.

[1, 2] In this instance the carload of corn was shipped by William Gower & Son from Williamsport, Md., to their own order, Charleston, S. C., notify Charles F. Boyd Company. It arrived at the freight station of the Atlantic Coast Line Railroad Company on June 18, 1920. The Railroad Company delivered it to the Terminal Company, to be delivered to Boyd Company on surrender of the bill of lading.

The Terminal Company placed it on the Boyd Company's side track at its warehouse June 23, 1920, without surrender of the bill of lading or payment of the draft to which it was attached. Placing the car on the side track of the Boyd Company was merely for convenience in handling, and it was clearly understood by the Terminal Company and the defendants that they thereby. acquired no possession or right of possession until the bill of lading had been presented, or the consent of the carrier had been obtained.

The defendants, nevertheless, contended that the car ceased to be moving in interstate commerce on arrival at the Charleston freight station of the Atlantic Coast Line Railroad, or at least when it was put on· defendant's side track, and that therefore the federal statute does not apply. It is true that when goods moving in interstate commerce reach their ultimate destination, and are reconsigned· from that destination on a new contract of shipment to some other point in the same state, the last movement is not interstate. Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257; Pittsburg, etc., Co. v. Bates, 156 U. S. 577, 15 Sup. Ct. 415, 39 L. Ed. 538; Gulf, etc., R. v. Texas, 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540; Chicago, etc., R. v. Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. Ed. 988. This, however, in no way affects the obvious rule that when a shipper delivers his goods to a carrier on a contract for carriage and delivery to a designated consignee in another state the goods remain under the protection of federal statutes regulating interstate commerce until they are lawfully surrendered to the consignee or his assignee. Vance v. Vandercook Co., 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100; Heymann v. Southern Ry., 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178; Ohio Com. v. Worthington, 225 U. S. 101, 109, 32 Sup. Ct. 653, 56 L. Ed. 1004; Texas, etc., R. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442.

Pere Marquette R. Co. v. French & Co., 254 U.·S. 538, 41 Sup. Ct. 195, 65 L. Ed. —— (January 17, 1921), relied on by defendants, does not affect the question. There the delivery was held to be made when the carrier, at the direction of the holder of the bill of lading, released its ·possession at the point of destination by turning over the goods to another railroad, or to a terminal company, for an entirely separate transportation "in assumed termination and discharge of its obligations." Here the carrier had no such request from the holder of the bill of .lading, nor did it intend to surrender possession by placing the car on the Boyd Company's side track for their convenience in handling. In such circumstances the Terminal Company and the side tracks are mere instruments of interstate commerce. Southern Pac. Ter. Co. v. I. C. C., 219 U. S. 498, 522, 31 Sup. Ct. 279, 55 L. Ed. 310. The District Judge so charged the jury, and the assignments of error on this point are without merit.

The next question is whether the evidence made an issue for the jury on the charge that the defendants obtained car No. 66804 from the Terminal Company by fraud and deception. The car was placed on the side track of Boyd Company. Not having the bill of lading,

Boyd, on behalf of the Charles F. Boyd Company, presented to the Terminal Company a paper represented by him to be a copy of the invoice and certified by him to be correct. The paper was in these words:

"Car PRR 66804. 89089# Bulk W. Corn @ $2.05, $2,627.36. Less freight, $280.74,—$2,346.62. We hereby certify that the above is a true and correct copy of the original invoice in our possession. Charles F. Boyd Co., Inc., per Chas. F. Boyd."

The real invoice was:

"1769 less 25 bushels shelled corn at $2.05, $3,627.36. P. R. R. 66804. Draft account Maryland Brokerage Co., Hagerstown, Md."

Boyd gave to Snelling, the agent of the Terminal Company, a certified check of Boyd Company for $3,627.36. Snelling testified that this check was given for the $2,627.36 represented on the certified copy of invoice as the price of the corn in car 66804 and $1,000 due by Boyd Company on another shipment. Boyd testified that the check was for the real amount due on car 66804, and that his certified statement of the invoice as $2,637.36 instead of $3,637.36 was merely an error of his stenographer, unobserved by him. Against this explanation and in support of Snelling's testimony the government relied on the significant fact that not only was the amount represented by Boyd $1,000 less than the invoice price, but the language of the true invoice differs entirely from the paper presented by Boyd; particularly in that the former described the corn in bushels and the latter in pounds, and that the true number of pounds was 99,112 and the number represented to be in the car was 89,089. Added to this is the extreme improbability of Boyd's statement that he gave the check for $1,000 more than he supposed to be the true amount, when he was very hard pressed for money. No further remark is necessary to show that a serious question of fact was made by the evidence as to the good faith of Boyd in the transaction.

Reliance is placed on the dates as showing conclusively the delivery of the carload of corn to the Boyd Company before the alleged false copy of the invoice and the check were given the Terminal Company. According to the testimony of Snelling, agent of the Terminal Company, the car was placed on side track of Boyd Company June 24, 1920, and released to it June 28th. The certified check for $3,346.62 was dated July 1, 1920. The paper certified by Boyd as copy of the invoice was not dated. If these dates are taken as exact, they do not remove the issue whether the defendant obtained the goods by means of the fraud and deception charged. Snelling, it is true, admitted sometimes allowing Boyd to unload cars before presenting the bill of lading with certified check, on his own uncertified check or on payment in money, and sometimes to commence unloading on his mere promise to pay during the day. He also admitted the possibility of having first taken an uncertified check for this carload of corn. But there is no evidence except Boyd's that Snelling gave this unwarranted favor before the amount was ascertained from a certified copy of the invoice. Even if Boyd gave his own uncertified check and obtained

the corn on the faith of his false statement as to the amount of the invoice, the charge of the indictment would be sustained. There was ample evidence to sustain a finding that he did. Indeed, the jury might well have discredited the whole of the evidence of Boyd because of the conflict with the evidence of Kennedy and Thomas on material issues, and for other reasons.

Indeed, the evidence of the face of the true invoice and that of the paper presented by Boyd as a copy might have been taken by the jury as convincing of a deliberate purpose to present to the Terminal Company a false statement of the amount due on the car. That inference by the jury might well lead to the further conclusion that the false paper was presented before the corn was delivered and as a means of getting it, since there was no reason to fabricate it afterwards. Other evidence might be set out tending to prove the guilt of the defendants, but enough has been recited to show that the trial judge was right in refusing to direct a verdict of acquittal.

Exception to the exclusion of evidence that order notify shipments were frequently released by agents of the carriers in violation of law and the rules of the carriers loses all force, in view of the fact that the evidence was in fact adduced.

[3] There is nothing in the point that Boyd could not be convicted because he obtained the carload of corn for the benefit of the Boyd Company. He practically owned the Boyd Company, and converting the corn to the use of the Boyd Company was in effect converting it to his own use. If he obtained it by fraud and deception he violated the statute, and it makes no difference that he was acting in the name of the Boyd Company. In such case the individual and the corporation are both guilty. The facts in Van Weel v. Winston, 115 U. S. 228, 6 Sup. Ct. 22, 29 L. Ed. 384, relied on by defendants, are so different that the case has no application.

On the issue whether Boyd obtained the corn by consent of the Terminal Company on his promise to pay in the future, or on a willfully false copy of the invoice and a check covering less than the true amount, the District Judge charged that if he obtained the corn by the consent of the carrier or its agent, unless he procured that consent and delivery by fraud and deception, he would not be guilty. There was nothing in the case requiring an instruction that the false statement must be likely to deceive one exercising prudence and caution. The carrier had nothing to put it on notice that the paper presented by Boyd was not a copy of the invoice. Hence there was no error in refusing the requests on these subjects.

We find no error in the record.

Affirmed.