### UNITED STATES v. ROGLES et al.
### No. 11204.

District Court, E. D. Missouri, E. D.
Jan. 24, 1935.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., Irwin Sale, Asst. U. S. Atty., of St. Louis, Mo., and James J. Caffrey, Asst. Counsel, National Recovery Administration, for the United States.

Victor Packman, of St. Louis, Mo., for defendants.

DAVIS, District Judge.

The bill prays that this court grant plaintiff an injunction against the defendants restraining them from selling or offering for sale coal, at such prices or upon such terms or conditions of sale that the buyers shall pay less therefor than the lowest cost as determined by a Divisional Code Authority for Division 32, as set forth in schedules established and effective as of November 19, 1934.

The facts are set forth in the bill. The parties submitted the application for a temporary injunction on affidavits and briefs subsequently presented to the court.

1. An injunction is not a writ of right, but one of discretion; and the authority of the court to grant injunctions must be exercised with extreme caution, so we have been repeatedly admonished, and only where

858

the reason and necessity therefor be clearly established.

■ 2. The writ is available when within well-established and recognized principles of law and equity, but should be reluctantly granted in cases of doubtful and uncertain legal basis.

■ 3. The Divisional Code Authority for Division 32, in determining the minimum retail price of coal in its jurisdiction, purported to have acted under the National Industrial Recovery Act § 3 (15 USCA § 703). This act does grant authority to establish codes of fair competition for trade and industry. But the statute expressly prohibits the approval of any code or codes which "permit monopolies or monopolistic practices." Price fixing is such a practice, and is condemned, rather than authorized by the act. Underselling is not "unfair competition" as that term has always been understood.

■ 4. It is asserted that the Commerce Clause (Const. art. 1, § 8, cl. 3) is the basis of the applicable portion of the statute. Then the force of the statute is spent when the commodity under consideration ceases to be in interstate commerce. The Supreme Court has definitely determined the time when articles transported cease to be a part of commerce between the states. When a commodity is brought to its destination, for use or trade, it becomes a part of the mass of property of the state, wherein it has come to rest, and is no longer property in interstate commerce. Brown v. Houston, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257; Pittsburgh Coal Co. v. Bates, 156 U. S. 577, 15 S. Ct. 415, 39 L. Ed. 538; General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615; Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191. Coal transported from Illinois to a dealer in Missouri loses its character as a commodity in interstate carriage when it reaches its destination, and, thereafter, is subject to state, and not federal law. So that even if it be assumed that the Recovery Act granted authority to code agencies to fix prices, such regulations could not be effective in sales of commodities that had ceased to be a part of commerce over which the national government has control.

For these reasons, other questions aside, the application for a temporary injunction is denied.