## KELLEY v. RHOADS.

ERROR TO THE SUPREME COURT OF THE STATE OF WYOMING.

No. 93. Submitted November 12, 1902.—Decided January 19, 1903.

A herd of sheep driven at a reasonable rate of speed from a point in Utah, across the State of Wyoming, a distance of about five hundred miles, to a point in Nebraska, for the purpose of shipment by rail from the latter point, is property engaged in interstate commerce to such an extent as to be exempt from taxation by the State of Wyoming under a statute taxing all live stock brought into the State "for the purpose of being grazed;" and this notwithstanding that the sheep were maintained by grazing along the route and that the owner could have shipped them to their ultimate destination from a point on the same railroad, which could have been reached from the starting point without entering the State of Wyoming.

*Brown* v. *Houston*, 114 U. S. 622; *Pittsburg &c. Coal Co.* v. *Bates*, 156 U. S. 577; *Coe* v. *Errol*, 116 U. S. 317, distinguished.

THIS was a petition originally filed in the District Court of Laramie County, Wyoming, by Kelley against Rhoads, county assessor of the county of Laramie, to recover back certain taxes to the amount of $250 upon a flock of sheep owned by the plaintiff and in charge of a shepherd who was driving them through the State of Wyoming, from the then Territory of Utah to the State of Nebraska.

The case was finally presented to the District Court upon the following agreed statement of facts, upon which the court en-

tered judgment in favor of the defendant, which was affirmed by the Supreme Court of the State, 9 Wyoming, 352:

" *Agreed Statement of Facts.*

" 1. John Kelley is now and was at all times mentioned in the petition filed herein a citizen and resident of the State of Kansas.

" 2. Oliver F. Rhoads was the duly elected, qualified and acting county assessor of the county of Laramie, State of Wyoming, from the 7th day of January, A. D. 1895, until the 4th day of January, A. D. 1897.

" 3. Plaintiff at all times mentioned in the petition herein was the owner of the sheep mentioned in said petition, and that said sheep on or about the 29th day of October, A. D. 1895, were in the county of Laramie, in charge of James M. Yeates, the agent of the plaintiff, who was driving and transporting said sheep through the State of Wyoming from the then Territory of Utah, to the State of Nebraska.

" 4. In driving said sheep in such manner it was the practice of the person in charge to permit them to spread out at times in the neighborhood of a quarter of a mile, and while so being driven the sheep were permitted to graze over land of that width. They were driven in some instances through large pastures, in other instances through the public domain and in other instances through pastures enclosed by fences. While being driven from the western boundary of the State to Pine Bluffs station, they were maintained by grazing along the route of travel.

" 5. Said sheep were duly returned by plaintiff for taxation and assessed by the assessor and collector of taxes for the year 1895 in the county of Juab, Territory of Utah.

" 6. On the 29th day of October, A. D. 1895, while the said herd of sheep were in charge of the agent of the plaintiff in the county of Laramie, State of Wyoming, the defendant, in company with S. J. Robb, deputy sheriff, of Laramie County, Wyoming, collected from said plaintiff's agent the sum of two hundred and fifty dollars, ($250,) alleged to be taxes due for the current year 1895, and that before the collection of said tax,

upon demand for the payment of the same by the said defendant, the plaintiff's agent refused to pay the same, whereupon the said defendant said to the agent of plaintiff that the said defendant could or would take enough sheep and sell them, and from the proceeds retain the said amount of two hundred and fifty dollars, ($250,) with costs ; whereupon the plaintiff's agent, to prevent the seizure and sale of plaintiff's property and the damage that would thereby accrue to plaintiff, paid the said defendant the sum of two hundred and fifty dollars ($250).

" 7. It was a fact and defendant had knowledge of the fact and was notified by plaintiff's agent that said herd of sheep was being driven across the State of Wyoming to Pine Bluffs station for the purpose of shipment, and that the same were not brought into the State for the purpose of being maintained permanently therein.

" 8. At the time of the regular assessment of property for the purpose of taxation in the county of Laramie in the year 1895, plaintiff had no property of any kind whatever in the county of Laramie, or in the State of Wyoming.

" 9. At the time the assessment of property in the county of Laramie for the year 1895 was equalized by the board of equalization of the county of Laramie, plaintiff had no notice of the time or place of meeting of said board of equalization, or that any assessment had been made against him for any purpose whatever within the State of Wyoming or the county of Laramie.

" 10. At the time the taxes for the current year 1895 were regularly and legally levied in the said county of Laramie, plaintiff had no property whatever in the county of Laramie or State of Wyoming.

" 11. Plaintiff has demanded of defendant a return to him of the amount of tax so collected from plaintiff's agent, but defendant refused and still refuses to return to plaintiff the amount so collected.

" 12. The time consumed in driving said sheep from the western boundary of the State of Wyoming to Pine Bluffs station, in Laramie County, was from six to eight weeks, and by the route followed the distance travelled was about five hundred miles.

"13. The said taxes were assessed, levied and collected by the defendant without the action, authority or assistance of the board of county commissioners, or of any other officer or officers of Laramie County.

"14. The said property so owned by the plaintiff had not been regularly assessed in any other county of the State for that year and no taxes had been paid thereon in any other county in the State.

"15. That for the purpose of shipping said sheep it was not necessary that they should be driven into the State of Wyoming, and that the railroad over which they were shipped could be reached from the point where the sheep were first driven by travelling a less distance than was necessary to travel from the place where they were first driven to any point in the State of Wyoming.

"16. That at the time the two hundred and fifty dollars was paid to the defendant, it was paid without any protest other than appears in the other paragraphs of this agreed statement of facts."

*Mr. J. A. Van Orsdel* for plaintiff in error.

*Mr. Willis Van Devanter* for defendant in error. *Mr. W. R. Stoll* was with him on the brief.

Mr. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This case resolves itself into the single question whether the property of the plaintiff was engaged in interstate commerce to such an extent as to be exempt from taxation by the State of Wyoming, through which it was being transported.

The statute of the State upon this subject, Laws. 1895, c. 61, is as follows:

"SEC. 1. All live stock brought into this State *for the purpose of being grazed* shall be taxed for the fiscal year during which it shall have been brought into the State.

"SEC. 2. Assessors are, for the purpose of enforcing this act,

hereby vested with the powers, and charged with the duties vested in and conferred upon other officers for the collection of taxes.

"SEC. 3. It shall be the duty of the assessors in the several counties to levy and immediately collect the taxes provided for in this act, as soon as live stock is brought into their counties to graze; and to pay, without delay, such sums to the treasurers of their respective counties.

"SEC. 4. Whenever the owner of any live stock upon which a tax has been levied as provided in this act, shall refuse to immediately pay the amount of such tax to the assessor who levied it, such assessor shall proceed forthwith to collect such tax as provided by law for the collection of delinquent taxes on other kinds of personal property."

The question to be determined, then, is, whether the stock of the plaintiff was brought into the State *for the purpose of being grazed* at the time it was assessed for taxation. This question must be answered by the agreed statement of facts. While this statement is binding upon this court, as well as the state courts, different inferences may be drawn from these facts as to the applicability of the state statute. Had the state court found directly the ultimate fact that these sheep were brought into the State for the purpose of being grazed, such finding might have bound us, but, under the facts actually found or agreed upon, we are at liberty to inquire whether they support the judgment. *Harrison* v. *Perea*, 168 U. S. 311.

The law upon this subject, so far as it concerns interference with interstate commerce, is settled by several cases in this court, which hold that property actually in transit is exempt from local taxation, although if it be stored for an indefinite time during such transit, at least for other than natural causes, or lack of facilities for immediate transportation, it may be lawfully assessed by the local authorities. *State* v. *Engle*, 34 N. J. Law, 425; *Standard Oil Co.* v. *Bachelor*, 89 Indiana, 1; *Burlington Lumber Co.* v. *Willetts*, 118 Illinois, 559.

The first case in which the question arose is that of *Brown* v. *Houston*, 114 U. S. 622, in which it was held that coal mined in Pennsylvania and sent by water to New Orleans to

be sold in the open market there on account of the owners in Pennsylvania, and lying at New Orleans in flatboats for sale, became intermingled, on its arrival there, with the general property of the State, and was subject to taxation under the general laws of Louisiana, although it might have been, after arrival, sold from the vessel on which the transportation was made, without being landed, and for the purpose of being taken out of the country by a vessel bound to a foreign port. The case was affirmed in *Pittsburg &c. Coal Co.* v. *Bates*, 156 U. S. 577, which differed from the former only in the fact that the coal did not reach New Orleans, the port of destination, but was still on the Mississippi River, nine miles above Baton Rouge, where it was held for sale. It appeared that the boats were held subject to the orders of plaintiff to be navigated to such place or places as he might deem convenient or advantageous to the trade in which he was engaged.

In *Coe* v. *Errol*, 116 U. S. 517, it was held that logs cut in New Hampshire, which were hauled down to the town of Errol on the Androscoggin River in that State, to be thence floated down the river to Lewiston, Maine, and were awaiting a convenient opportunity for such transportation, were still a part of the general mass of property of the State liable to taxation, if taxed in the usual way in which such property was taxed in that State. It was a stipulated fact that the timber thus cut had lain over one season, being about a year, in the Androscoggin River in that State either in Errol, Dummer or Milan; and that other timber referred to in the petition as having been cut in Maine had lain over in Errol since the spring or summer before the taxation. The question is thus stated by Mr. Justice Bradley: "Are the products of a State, though intended for exportation to another State, and partially prepared for that purpose by being deposited at a place or port of shipment within the State, liable to be taxed like other property within the State?" Said he: "There must be a point of time when they cease to be governed exclusively by the domestic law and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which

they commence their final movement for transportation from the State of their origin to that of their destination. . . . Until then it is reasonable to regard them as not only within the State of their origin, but as a part of the general mass of property of that State, subject to its jurisdiction, and liable to taxation there."

The substance of these cases is that, while the property is at rest for an indefinite time awaiting transportation, or awaiting a sale at its place of destination, or at an intermediate point, it is subject to taxation. But if it be actually in transit to another State, it becomes the subject of interstate commerce and is exempt from local assessment.

We place no reliance upon the fact in this case that plaintiff's sheep had been duly returned for taxation, and assessed for the taxes of 1895 in the Territory of Utah, since, although this may have some bearing upon the equities of the case, it was declared in *Coe* v. *Errol* to have no significance as a matter of law.

The question turns upon the purpose for which the sheep were driven into the State. If for the purpose of being grazed, they are expressly within the first section of the act. But if for the purpose of being driven through the State to a market, they would be exempt as a subject of interstate commerce, though they might incidentally have supported themselves in grazing while actually in transit. We think the question is sufficiently answered by the statement of facts, from which it appears (3) that the sheep were in charge of plaintiff's agent, " who was driving and transporting said sheep through said State of Wyoming from the then Territory of Utah to the State of Nebraska ; " (4) " While being driven from the western boundary of the State to Pine Bluffs station, on the eastern boundary, they were maintained by grazing along the route of travel." (7) " It was a fact, and defendant had knowledge of the fact, and was notified by plaintiff's agent, that said herd of sheep were being driven across the State of Wyoming to Pine Bluffs station *for the purpose of shipment,* and that the same were not brought into the State for the purpose of being maintained permanently there." (12) " The time consumed in driv-

ing said sheep from the western boundary of the State of Wyoming to Pine Bluffs station, in Laramie County, was from six to eight weeks and by the route followed the distance travelled was about 500 miles."

It thus appears that the only purpose found for which this herd of sheep was being driven across the State was for *shipment*, and the agreed statement wholly fails to show that they were detained at any place within the State for the purpose of grazing or otherwise. As they consumed from six to eight weeks in travelling about 500 miles, or, as the Supreme Court found, at the rate of about nine miles per day, it does not even appear that they loitered unnecessarily on the way. As they required sustenance on the journey, and could obtain it only by grazing, it would appear, though there is no testimony upon that point, that they could hardly have been driven more rapidly without a loss of flesh during the transit. The only evidence as to the manner in which such grazing was conducted is contained in the fourth stipulation : "In driving said sheep in such manner it was the practice of the person in charge to permit them to spread out at times in the neighborhood of a quarter of a mile, and while being so driven the sheep were permitted to graze over land of that width. They were driven, in some instances, through large pastures ; in other instances through the public domain, and in other instances through pastures enclosed by fences." Considering that the herd numbered about 10,000 sheep, and were moved eastward at the rate of nine miles a day, it does not seem as though the fact that they were permitted to graze over a width of a quarter of a mile was evidence of any unnecessary delay ; and while the owner would undoubtedly be liable for any damage done to pasturage *en route*, there is no evidence at all that the transit of the sheep was delayed for the purpose of grazing while going through the State. Bearing in mind that the weight of all the previous cases in this court has been laid upon the fact of an indefinite delay, awaiting transportation at the commencement of the journey, or awaiting sale or delivery at its termination, the facts of this case fail completely to bring it within those authorities. The fact that the sheep may not

have lost flesh, or may even have gained flesh, during their transit through the State, is impertinent, unless the primary purpose of their being driven there was for grazing.

It is true that the sheep might have been transported by rail from Utah to Pine Bluffs, but the statement fails to show whether that course would have been more or less expensive than the one adopted. It is clear that the owner had the right to avail himself of such means of transportation as he preferred, and in estimating the probable cost he was at liberty to consider the fact that he was licensed to make use of the public lands of the United States without charge for the sustenance of his sheep. *Buford* v. *Houtz,* 133 U. S. 320. Why he shipped them by rail from Pine Bluffs is not explained, but it seems quite probable that it was due to the fact that the public lands in Nebraska had been so far taken up that the sheep would not be able to obtain sufficient nourishment if they were driven through that State. We do not deny that it may have been plaintiff's intention not only to graze but to fatten his sheep while *en route* through Wyoming. Indeed, we may suspect it, but there is nothing in the agreed statement of facts to justify that inference. While the fifteenth finding states that for the purpose of shipping said sheep it was not necessary that they should be driven into the State of Wyoming and that they might have been shipped on the railroad much farther west than Pine Bluffs station, that finding really resolves itself back to the proposition already stated, that the owner or his shepherd was at liberty to choose his own method of transportation, and as he took a direct route through the State, deviating neither to the right nor to the left, and travelled as rapidly as a due regard for the condition of his flock permitted, we think there could be no fair inference from these facts that the sheep were introduced into the State for the purpose of grazing.

There is another consideration worthy of attention, and that is that the right which the State of Wyoming had to tax this property might have been exercised in every State through which the sheep were driven. In this particular case it would appear that they were shipped at Pine Bluffs, but they might with equal propriety have been driven through Nebraska and

Iowa before reaching their final destination. Indeed, section 3 of the act, which provides " it shall be the duty of the assessors in the several counties to levy and immediately collect taxes as provided for in this act, as soon as live stock is brought into their counties to graze," leaves it an open question whether these taxes may not have been assessed in every county through which these sheep were driven.

The judgment of the Supreme Court of Wyoming is therefore

*Reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.*