Coös,
Dec. 7, 1915.

## COLEBROOK *v.* BERLIN MILLS COMPANY.

Lumber is taxable, generally, in the town where it is on the first day of April.

Lumber which has been cut and manufactured in one town, transported to another town, where it is stuck up on the first day of April, awaiting orders for sales and shipments to market, is not "on its way to market or temporarily delayed therein on its way to market," within the meaning of P. S., *c.* 56, *s.* 18; and hence such lumber is taxable under P. S., *c.* 56, *s.* 16 in the town where it is on the first day of April.

ASSUMPSIT, to recover taxes assessed against the defendants on lumber located in Colebrook on April 1, 1913, and April 1, 1914. Transferred without a ruling from the December term, 1914, of the superior court by *Sawyer, J.*, on agreed facts which are stated in the opinion. It was agreed that if the lumber was taxable in Colebrook there should be judgment for the plaintiffs for the amount of the specification; otherwise, there should be judgment for the defendants.

*Thomas F. Johnson* (by brief and orally), for the plaintiff.

*Drew, Shurtleff,, Morris & Oakes* and *Sullivan & Daley (Mr. Oakes* orally) for the defendants.

PLUMMER, J.   The defendants, who have their office and principal place of business at Berlin in the county of Coös, are the owners of timber land in Millsfield in said county.   The lumber upon which the tax was assessed was sawed from timber cut from the defendants' land in Millsfield, at a mill there located.   It was drawn from there in the winters of 1912–13 and 1913–14 to Colebrook, and stuck up near a siding of the Maine Central Railroad, on land leased by the defendants of the railroad, and there awaited orders for sales and shipments to market.   The amount of lumber at Colebrook, April 1, 1913, was 542,255 feet, and April 1, 1914, 167,898 feet.   As fast as orders were received the lumber was shipped; and between June 27, 1913, and August 14, 1913, twenty-seven carloads of this lumber were shipped to customers of the defendants in New York and other distant points outside of New Hampshire.   Only one shipment has been made from lumber assessed at Colebrook since April 1, 1914.

"Wood, bark, timber, logs, and lumber, manufactured or unmanufactured, exceeding fifty dollars in value, shall be taxed at its full value in the town where it is on the first day of April."   P. S., c. 56, s. 16.   "When such property is in any town other than' that in which it was cut, on the first day of April, on its way to market, or temporarily delayed therein on its way to market, if the owner, residing in the state, furnishes to one of the selectmen or assessors of such town, on or before the fourth day of said April, a statement under oath signed by himself and by one of the selectmen or assessors of the town where the owner resides specifying the amount of the property, and that the same has been given in by the owner for taxation in that month in the town where the owner resides, it shall be there taxed."   P. S.; c. 56, s. 18.

Lumber generally is taxable in the town where it is on the first day of April.   But when it is on its way to market, or temporarily delayed on its way to market, the owner, if a resident in this state, by giving the requisite statement, may have it taxed in the town where he resides. ' The defendants seasonably furnished to Colebrook the statement required by the above section, and the lumber was taxed to them in Berlin.   Therefore, the only question for

consideration is whether the lumber of the defendants, at the time of assessment by the plaintiffs, was on its way to market, or temporarily delayed in Colebrook on its way to market. At the time the lumber was taxed it was stored in Colebrook on land leased by the defendants, waiting orders for sales and shipments to market. A portion of the lumber assessed April 1, 1913, was sold and shipped to purchasers between June 27, 1913, and August 14, 1913. But it does not appear that the balance of this lumber had been sold and shipped away when the case was tried. Only one shipment from the lumber assessed April 1, 1914, had been made, and that was January 6, 1915. These facts do not disclose a sufficient reason for holding that the lumber was on its way to market, or temporarily delayed on its way to market. It was stored upon the defendants' land, for the defendants' convenience, and for an indefinite period, the length of which would depend upon how soon it could be sold at a satisfactory price.

No case has been decided in this jurisdiction that is like the one at bar, although *Winnipiseogee Paper Co.* v. *Northfield*, 67 N. H. 365, is somewhat similar. In this case the plaintiffs transported pulp-wood to Northfield, where they unloaded it on the bank of the Winnipiseogee river. It remained there until they had occasion to use it, when it was floated down the river to their mills in Franklin and there manufactured into pulp to be used in making paper or sold to others for that purpose. While the pulp-wood was in Northfield it was there assessed for taxation. The court held that the pulp-wood while in Northfield was "neither on the way to market, nor temporarily delayed on the way to market, within the meaning of the statute."

*Coe* v. *Errol*, 116 U. S. 517, decides that logs cannot escape taxation where located in a state on the ground that they are subjects of interstate commerce, unless they have been committed to a common carrier for transportation out of the state or have started for their final destination to another state. The court in the opinion said: "When the products of the farm or the forest are collected and brought in from the surrounding country to a town or station serving as an entrepôt for that particular region, whether on a river or a line of railroad, such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the state to the state of their destination, or have started on their ultimate passage to that state." The real point in this

case was: when did exportation begin?  In the instant case the issue is whether the lumber was on the way to market.  The cases are very similar in principle; and the above case, which is a leading case in this country, is a strong authority for the position that the defendants' lumber was not on its way to market, or temporarily delayed on its way to market, when it was taxed in Colebrook.

The court in *Kelley* v. *Rhoads*, 188 U. S. 1, referring to *Coe* v. *Errol, supra,* and *Brown* v. *Houston,* 114 U. S. 622, said: "The substance of these cases is that, while the property is at rest for an indefinite time awaiting transportation, or awaiting a sale at its place of destination, or at an intermediate point, it is subject to taxation.  But if it be actually in transit to another state, it becomes the subject of interstate commerce and is exempt from local assessment."  Exportation does not begin until the property has been placed in the actual custody of a common carrier, and started on its final journey out of the state.  *Ayer & Lord Tie Co.* v. *Keown,* 122 Ky. 580; *State* v. *Lumber Co.*, 101 Minn. 186.

The defendants' lumber was not on its way to market, because it was waiting orders for sales and shipments; and until it was sold it could not be started on its way to market, and it certainly could not be temporarily delayed on its way to market before it had been started.  The most that can be said for the contention of the defendants is that they intended to ship the lumber to purchasers as soon as they could be found.  It can hardly be claimed that the owners' state of mind in relation to the lumber can be invoked to relieve them from taxation in Colebrook.

*Judgment for plaintiffs.*

All concurred.