(78 South. 450)

MORAGNE v. STATE.   (6 Div. 762.)

(Supreme Court of Alabama.   March 23, 1918.)

1. COMMERCE ⊗⇒33—"INTERSTATE SHIPMENT" —TRANSPORTATION BY AUTOMOBILE.

Transportation of liquors through this state from one state to another by automobile over public highways, instead of by rail or boat, is an "interstate shipment" if there be no break or disconnection therein by removal from the vehicle or by disposing or attempting to dispose thereof in the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. COMMERCE ⊗⇒61(1) — INTERSTATE TRANSPORTATION—INTOXICATING LIQUORS.

Acts 1915, p. 27, § 24, making it unlawful to transport prohibited intoxicating liquors for another when received at one "point, place or locality in this state," and prohibiting transportation on the highways of "any such liquor for another," does not apply to an interstate shipment.

**3. INTOXICATING LIQUORS ⬦⟿138 — INTER-STATE TRANSPORTATION.**

The state prohibition statutes and Webb-Kenyon Act March 1, 1913, c. 90, 37 Stat. 699 (U. S. Comp. St. 1916, § 8739), do not severally or jointly prohibit transportation of liquor through this state from one state to another, and have no application if permitted by the laws of the shipping and receiving states.

**4. INTOXICATING LIQUORS ⬦⟿238(1)—UNLAW-FUL TRANSPORTATION—QUESTION FOR JURY.**

Shipment of intoxicating liquors from a dry state through this state to a wet state by automobile, instead of the usual mode of shipment by rail, is for the consideration of the jury in determining whether the transportation was an interstate shipment not prohibited by the state laws or the Webb-Kenyon Act.

**5. STATUTES ⬦⟿225¾ — CONSTRUCTION — RE-ENACTED ACT.**

Construction of a statute by Supreme Court should control construction of the same statute subsequently' re-enacted.

Gardner, J., dissenting.

Certiorari to Court of Appeals.

Frank Moragne, alias Frank Moriner, was convicted of unlawfully transporting intoxicating liquors. His conviction was affirmed by the Court of Appeals (78 South. 98), and he applies for a writ of certiorari. Application denied. See, also, 74 South. 862; 200 Ala. 689, 77 South. 322.

John W. Altman, of Birmingham, for appellant. F. Loyd Tate, Atty. Gen., and Emmet S. Thigpen, Asst. Atty. Gen., for the State.

PER CURIAM. [1] The facts as stated in the opinion of the Court of Appeals (78 South. 98) are as follows:

"By arrangement made with one Morris, of Pensacola, Fla., in Birmingham, Ala., in November or December, 1915, the appellant agreed and undertook to transport spirituous, vinous, or malt liquors for said Morris from the state of Georgia, through Alabama, to Pensacola, in the state of Florida, in an automobile over the public highways of this state; and in pursuance of this undertaking the defendant received for this purpose from the agent of the Southern Railroad at Cave Springs, Ga., a shipment of liquors consisting of about 74 gallons of whisky, which had been shipped from Chattanooga, Tenn., consigned to Morris; that these liquors were loaded into his automobile and carried by him over the public roads to a point one mile past Clay, in Jefferson county, Ala., where the defendant was arrested by a deputy sheriff of Jefferson county, Ala., and at the time of his arrest defendant had said liquor in his possession for the purpose of carrying it through the state, over the state's public highways, to the state of Florida, and claimed to have a through bill of lading for said liquor. It was also shown that Morris had ordered the liquor in due course of business from a wholesale dealer in Chattanooga, Tenn.; that the shipment was made up and in the regular and ordinary way started on its way over the Southern Railway, billed to Cave Springs, Ga., and from there via automobile to Pensacola, Fla."

We think that these facts, if believed by the jury, show that the shipment in question is an interstate one, notwithstanding it was by automobile and over the public highways of the state instead of by rail or boat (Han-

nibal & St. J. R. Co. v. Husens, 95 U. S. 465, 24 L. Ed. 527; Kelley v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. Ed. 359), just as much so as would be a shipment from Louisville, Ky., to New Orleans, La., over the Louisville & Nashville Railroad, which passes through the state of Alabama. Of course, if there was such a break or disconnection in the shipment by removing it from the vehicle and storing it in this state or by disposing of or attempting to dispose of the cargo, or any part thereof, in this state, it would no doubt cease to be protected as an interstate shipment, and the state statute as well as the Webb-Kenyon law would apply to same.

[2, 3] The state seems to rely upon section 24 of the Act of 1915, p. 27, as applying to this shipment or transportation over its highways. This section, however, must be considered and interpreted in its entirety and, when considered, cannot be rationally construed as applying to an interstate shipment. It relates only to liquors when received at one point, place, or locality in this state to be shipped or transported to and delivered to another at another "point, place or locality in this state." The prohibition of the transportation upon the highways of "any such prohibited liquors for another" means such liquors as may be received at one point in the state to be delivered at another point in this state, or would no doubt include liquors received out of the state to be delivered within the state; not to liquors received out of the state and to be delivered at some point beyond this state. As the shipment in question is not prohibited by the laws of this state, if such could be done, the Webb-Kenyon law has no application, as it does not make a shipment unlawful and deprive it of interstate protection unless such a shipment is forbidden by the state law. The statutes of Alabama and the Webb-Kenyon law do not severally or jointly prohibit the transportation of liquor through this state from one state to another, and have no application if permitted by the laws of the shipping and receiving states.

[4] We may, of course, indulge a certain degree of suspicion as to the plausibility of the defense, and naturally wonder why liquors were shipped from the dry state of Georgia through Alabama to the wet state of Florida, and by the method adopted, instead of the usual mode of shipment by rail; but these are facts to be considered by the jury and, if found to be true, show an interstate shipment, not prohibited by our statute or the Webb-Kenyon Act, and, as this question should have been left to the jury, it was error to hold as matter of law that the defendant was guilty.

The case of Southern Express Co. v. State, 188 Ala. 454, 66 South. 115, expressly holds that the Webb-Kenyon Act does not prohibit the transportation of intoxicating liquor

---

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

from one state into another, except when the liquors are to be received, procured, or in some way used as prohibited by the laws of the latter state.

The case of Southern Express Co. v. Whittle, 194 Ala. 406, 69 South. 652, L. R. A. 1916C, 278, dealt with shipments into this state and not through the same, and nowhere holds that the Webb-Kenyon Act deprives a shipment of its interstate character unless said shipment was made contrary to the laws of the receiving state.

The case of Crane v. Campbell, Sheriff, 245 U. S. 304, 38 Sup. Ct. 98, 62 L. Ed. 304, recently decided by the United States Supreme Court, has no bearing upon the present question, as it dealt with the right of a person to possess liquor contrary to the laws of a state and held that the statute did not violate the fourteenth amendment, notwithstanding the liquor was possessed for personal use.

The case of Seaboard Air Line v. North Carolina, 245 U. S. 298, 38 Sup. Ct. 96, 62 L. Ed. 299, simply holds that the Webb-Kenyon Act steps in and deprives the shipment in question of interstate protection because violative of the laws of North Carolina; just as we held would be the result in the Whittle and Southern Express Co. Cases, supra.

The difference between this court and the Court of Appeals is not as to the purpose, scope, and effect of the Webb-Kenyon Act, but in the interpretation of section 24 of our own statute, and which reads as follows:

"Sec. 24. It shall be unlawful for any person, firm, corporation or association whether a common carrier or not, to accept from another for shipment, transportation or delivery, or to ship, transport or deliver for another said prohibited liquors or beverages or any of them, when received at one point, place or locality in this state, to be shipped or transported to or delivered to another person, firm or corporation at another point, place or locality in this state, or to convey or transport over or along any public street or highway any of such prohibited liquors for another, and any person violating any provision of this section shall be guilty of a misdemeanor, but the provisions of this section shall not apply to those transporting and delivering to druggists and physicians such alcohol as they are permitted by the laws of the state to sell or dispose of in accordance with the statutory regulations upon that subject."

The Court of Appeals proceeds upon the evident theory that said section forbids the transportation of liquors over the highways of the state regardless of the nature of the shipment or where received, and where it is to be transported or the purpose for which it was transported. While we think that the more rational construction is that the public highway is not to be used for the transportation of such prohibited liquors as dealt with in the first part of the section, to wit, liquors received at one point in the state and to be delivered to another at another point or locality in the state and not to liquors received outside of the state to be delivered

at some point in some state other than Alabama, notwithstanding, it may go over the highways of this state. The statute has no application to liquors merely passing through this state, that is, from one state to another, whether by rail, boat, or by transportation over our public roads. Of course, if the shipment is so broken or intercepted so as to lose its interstate character and the liquor or any part thereof should be stored, disposed of, or distributed in this state, our statute would apply; but, so long as its interstate character is preserved, that is, so long as it is being bona fide transported through this state, our statute does not apply so as to prohibit such transportation.

It is perfectly clear, from a reading of our prohibition statutes, that they never were, by the makers or those who enforce them, intended to apply to liquors which were merely passing through the state, as a part of an interstate shipment. Such liquors, while in such transit, never become subject to the laws of the state, either for police regulation or for the purpose of taxation. Such has ever been the uniform holding of all courts, both state and federal. That our Legislature has thus far not attempted to impinge upon this generally recognized principle is not left open for construction, for all our prohibition statutes relating to the transportation of intoxicating liquors have express provisions to the effect that they shall not be construed as applying to interstate shipments. The very act (Acts 1915, p. 34, § 36) on which the Court of Appeals bases its opinion expressly so provides in the following language:

" * * * It is not intended by this act to interfere with the exclusive power of the Congress of the United States to regulate commerce with foreign nations and among the several states; and this act shall be so construed as to avoid conflict with that clause of the Constitution of the United States which confers upon the Congress of the United States the power to regulate commerce with foreign nations and among the several states and with Indian tribes."

The Court of Appeals is wholly ignoring this provision of our statutes, and is applying our statutory regulations to shipments wholly and completely interstate or merely in transit through the state, which the federal Constitution expressly says shall be controlled by Congress and Congress alone. That property, while merely passing through a state as a part of an interstate shipment, whether by public or private conveyance, is not subject to state laws—either police laws or laws governing taxation—has been repeatedly decided by all state and federal courts.

In the case of Kelley v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. Ed. 359, the headnote thus correctly states the ruling:

"A herd of sheep driven at a reasonable rate of speed from a point in Utah across the state of Wyoming, a distance of about 500 miles, to a point in Nebraska, for the purpose of shipment by rail from the latter point, is property engag-

ed in interstate commerce to such an extent as to be exempt from taxation by the state of Wyoming under a statute taxing all live stock brought into the state 'for the purpose of being grazed'; and this notwithstanding that the sheep were maintained by grazing along the route and that the owner could have shipped them to their ultimate destination from a point on the same railroad, which could have been reached from the starting point without entering the state of Wyoming. Brown v. Houston, 114 U. S. 622 [5 Sup. Ct. 1091, 29 L. Ed. 257]; Pittsburg, etc., Coal Co. v. Bates, 156 U. S. 577 [15 Sup. Ct. 415, 39 L. Ed. 538]; Coe v. Errol, 116 U. S. 317 [6 Sup. Ct. 475, 29 L. Ed. 715]—distinguished."

In the case of Rhodes v. Iowa, 170 U. S. 412, 414, 415, 426, 18 Sup. Ct. 664, 42 L. Ed. 1088, the court was construing an Iowa prohibition law, and applied the same rules and limitations as to the power of the state to tax. In that case, the court, speaking through its present Chief Justice, among other things said:

"The sole question presented for consideration is whether the statute of the state of Iowa can be held to apply to the box in question whilst it was in transit from its point of shipment, Dallas, Ill., to its delivery to the consignee at the point to which it was consigned. That is to say, whether the law of the state of Iowa can be made to apply to a shipment from the state of Illinois, before the arrival and delivery of the merchandise, without causing the Iowa law to be repugnant to the Constitution of the United States. * * *

"After great consideration, it was held that the law of the state of Iowa, in so far as it affected interstate commerce, was repugnant to the interstate commerce clause of the Constitution, and was void. It was decided that the transportation of merchandise from one state into and across another was interstate commerce, and was protected from the operation of state laws from the moment of shipment whilst in transit and up to the ending of the journey by the delivery of the goods to the consignee at the place to which they were consigned. * * *

"We think that, interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee, and of course this conclusion renders it entirely unnecessary to consider whether if the act of Congress had submitted the right to make interstate commerce shipments to state control it would be repugnant to the Constitution.

"It follows from this conclusion that as the act for which the plaintiff in error was convicted, and which consisted in moving the goods from the platform to the freight warehouse, was a part of the interstate commerce transportation, and was done before the law of Iowa could constitutionally attach to the goods, the conviction was erroneous, and the judgment below is therefore reversed."

If our state statutes would have prohibited such a shipment through the state, but for prior acts of Congress regulating interstate shipments, then the Webb-Kenyon Act would probably have removed the barrier and left the state statutes enforceable; but the trouble is our statutes do not prohibit such shipments and have never attempted so to do, and expressly provide that they shall not be construed so as to apply to such shipments.

[5] Section 24 of the Act of 1915 (pp. 27, 28) is a verbatim copy of section 24 of the Act of 1909, Sp. Sess. (pages 86, 87), which provision was construed by this court in the case of Southern Express Company v. State, 188 Ala. 454, 66 South. 115. The provision was there held not to apply to prohibit interstate shipments; and the Webb Act was held not to extend the provision of the state act to such shipments. The decision as to these questions is well stated in the first, second, and third headnotes as follows:

"1. The Fuller Bill (Acts 1909, p. 63) prohibits intrastate shipments of intoxicating liquors, except when made for purposes therein stated, but does not attempt to prohibit interstate shipments.

"2. The Webb Law (37 Stat. 699) does not prohibit the transportation of intoxicating liquors from one state into another, except where the liquors are to be received, possessed, or in some way used as prohibited by the laws of the latter state, and from such liquors so imported it merely withdraws their interstate character and their immunity from state regulations, and, as so construed, it is a valid exercise of the power of Congress to regulate interstate commerce.

"3. Under the Webb Law, the Carmichael Bill (Acts 1909, p. 8), and the Fuller Bill (Acts 1909, p. 63), an interstate carrier is not prohibited from bringing into the state intoxicating liquors, except only such as are intended for unlawful use in the state, and a carrier in possession of liquors for delivery to a person who intends to use the same in violation of the state law, or a carrier delivering in a state liquor to a person in the state intending to use the same illegally, violates the state law, unless it has no knowledge of such unlawful purpose."

The court, there speaking through De Graffenried, J., said:

"The above act, by its terms, does not prohibit the transportation of intoxicating liquor from one state into another state except upon the contingency that the liquor is to be received, possessed, or sold or in some way used in a manner prohibited by the laws of the state into which such liquor is to be, or is in fact, imported. The above act, by its terms, divests intoxicating liquor of its 'interstate character,' and withdraws from it 'interstate protection' at the hands of the federal government only when it is shipped from one state into another state for purposes which, under a valid statute of the state into which it is shipped, are illegal in the state into which it is shipped. In other words, under the terms of the above-quoted act, intoxicating liquor, as an article of interstate commerce, is not an outlaw. It is, however, as such an article, under certain conditions, an outlaw. * * *

"When, therefore, the Legislature of this state, through the Carmichael Bill and the Fuller Bill, made it unlawful to sell or give away intoxicating liquors or to transport them except for certain purposes, from any point in the state to any other point in the state, it in no way, in recognition of the above federal power, attempted to prohibit the shipment of intoxicating liquor from another state into this state. * * *

"As common carriers engaged in interstate commerce are not prohibited by the federal laws from bringing into this state all intoxicating liquors, but only such as are intended for unlawful use in this state, the above-quoted provision of the Fuller Bill is not applicable to common carriers engaged in interstate commerce. Plainly this provision of the Fuller Bill was not, when it was passed, intended to apply to common carriers engaged in interstate commerce,

and there is nothing in the Webb Bill bringing such carriers within the operation of said quoted section of the Fuller Bill. In so far as this state is concerned, its laws have no effect upon liquors brought into this state from another state, unless, in contravention of the act of Congress, the carrier has them in its possession for the purpose of delivery or undertakes to deliver them for illegal use in the state."

This section of the Fuller Bill has thus been re-enacted by the Legislature with this construction placed upon it by this court; and, if there was ever any doubt about its interpretation, such re-enactment with this construction ought now to control.

While the application for certiorari is denied, we cannot approve the opinion of the Court of Appeals.

Application denied. All the Justices concur.

GARDNER, J. (dissenting). This is the second presentation of this case to this court (Frank Moragne, alias, etc., v. State, 77 South. 322,[1] present term), and the identical question is involved. I was unable to concur in the views of the majority when the case was formerly here. I still entertain the view that the opinion of the Court of Appeals is sound and properly treats the question. I therefore respectfully dissent.