(No. 15812.—Finding affirmed.)

THE TIDEWATER PIPE COMPANY, Appellant, *vs.* THE BOARD
OF REVIEW OF CRAWFORD COUNTY, Appellee.

*Opinion filed February 19, 1924—Rehearing denied April 3, 1924.*

1. CARRIERS—*when oil company using pipe line is not a common
carrier.* An oil refining company using a pipe line of its own con-
struction to transport its own oil from one State to another is not
a common carrier engaged in interstate commerce where it handles
no oil except its own, whether the oil transported was taken from
wells belonging to the company or was purchased by it from wells
of another company.

2. TAXES—*property in interstate transit is not taxable locally.*
While there is no express statutory exemption of property in tran-
sit from a point within to a point without the State, such property
in interstate transit is not liable to local taxation when passing
through a taxing district.

3. SAME—*when property is not exempt as being in interstate
transit.* Oil stored in tanks of an oil refining company previous
to its being transported or sent through pipe lines to another State
is not exempt from local taxation as being in interstate transit, as
such property does not cease to be a part of the general mass of
property subject to taxation by local taxing authorities until its
shipment to another State has actually started upon a continuous
route or journey.

CERTIFICATE of appeal to review the decision of Board
of Review of Crawford county.

AXTELL, J. BYLES, FRANCIS I. FALLON, and McCARTY
& ARNOLD, for appellant.

CHARLES E. JONES, State's Attorney, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellant appeared before the board of review of
Crawford county and objected to the assessment of a large
quantity of crude oil belonging to it in its tanks near Stoy,
in said county, on the first day of April, 1923. The ground
for the objection to taxation of this oil was that appellant

is a common carrier engaged only in interstate commerce and the oil was in its custody as such carrier in process of transportation to a foreign State, and was therefore in interstate commerce and not subject to taxation by the local taxing bodies of Crawford county. The board of review held the oil subject to taxation, and appellant prayed an appeal to the State tax commission. The commission affirmed the holding of the board of review and has certified the case to this court for determination.

The Tidewater Pipe Company, Limited, appellant, has its principal business office in Bradford, Pa. The lines by which oil is transported begin in Crawford county and extend east to Bayonne, N. J., where the oil is delivered to the storage tanks of appellant. It is not apparent from the abstract of record whether appellant has a refinery at Bayonne or disposes of the oil there. The only testimony in the record is that of the superintendent of the gathering lines of appellant. By his testimony it appears that appellant maintains a system of gathering lines in Crawford county through which the oil is transported from the tanks of the producers in that county, of whom appellant purchases the oil, to appellant's tanks situated near Stoy, in that county. From these latter tanks, referred to as storage tanks, the oil is pumped into the lines of appellant and sent through them to Bayonne. On the first day of April, 1923, there were in the storage tanks near Stoy several thousand barrels of oil awaiting transportation through the pipe lines. The oil originated in Crawford county and was the property of appellant at the time it was taken through its gathering lines into the storage tanks at Stoy. According to the testimony of the superintendent, the oil in the tanks at Stoy at times remained in storage for as much as twelve months when the carrying lines of appellant were in such a condition that it could not be transported or no orders were had for its transportation. The testimony shows that at least a portion of the particular oil taxed had been in the

tanks at Stoy from July or August previously and was pumped out after the date of assessment.

Appellant contends that it is a common carrier and that the oil attempted to be taxed was in transit, and was therefore interstate commerce and not subject to local taxation. We are of the opinion that the facts in the case do not show that appellant is a common carrier. In the cases known as the *Pipe Line cases,* 234 U. S. 548, it was held that an oil company using a pipe line solely for the purpose of conducting its own oil from its own wells in one State to its own refinery in another State is not a common carrier engaged in interstate traffic so as to come under the Interstate Commerce act. In this case it appears that the oil was purchased by appellant in Crawford county to be shipped to its own plant in Bayonne, N. J., and, so far as the record shows, it handles no oil except its own, and no distinction in the application of that holding appears to arise here by reason of the fact that the oil was purchased in Crawford county instead of coming from the wells of appellant there.

While appellant is not a common carrier it does not follow from that fact that if its oil was in transit such transportation of the oil would not be interstate commerce. In *Kelly* v. *Rhoads,* 188 U. S. 1, Kelly, the owner of 10,000 sheep, was driving them through the State of Wyoming. He was a resident of Kansas. The agent of Kelly in driving the sheep through the State allowed them to graze over the land. They moved about nine miles per day. The sheep were assessed by the Wyoming local taxing authorities, and the sheriff required the payment of $250 tax, on pain of seizure of enough of the sheep to pay the tax. The question involved was whether or not the sheep of Kelly were in interstate commerce and therefore exempt from taxation by the local taxing authorities of the State of Wyoming. It was held that it was immaterial whether the sheep were being transported by an interstate carrier or driven;

that if the purpose was to move them through the State the act of driving them through was an act of interstate commerce, and the sheep did not become subject to tax by reason of their grazing on the way.

Under the Revenue law of this State all personal property in the State shall be assessed and taxed except such as is specifically exempt from taxation by statute. There is no express exemption of property in transit from a point within to a point without the State, but it is well settled by this and other courts that property in interstate transit which is passing through a taxing district is not liable to local taxation. (*Prairie Oil and Gas Co.* v. *Ehrhardt,* 244 Ill. 634; *People* v. *Bacon,* 243 id. 313; *Burlington Lumber Co.* v. *Willetts,* 118 id. 559; *Irvin* v. *New Orleans, St. Louis and Chicago Railroad Co.* 94 id. 105; *State* v. *Stevens,* 146 Mo. 622; *Kelly* v. *Rhoads, supra; Coe* v. *Errol,* 116 U. S. 517.) The principal question arising in this case, therefore, is whether this oil was in transit at the time it was assessed.

It is not disputed that the oil in the tanks was to be used as needed at Bayonne, N. J., and was transported there in accordance with the needs of appellant at that place as rapidly as the pipe line facilities would permit. Breakages in the pipe line would cause delay naturally incident to the transportation of this oil. There were other tanks along the route of this pipe line into which oil was pumped. In case of a break in the line these tanks were used as equalizers, allowing the broken section of the line to be shut off while oil could still be moved by pumping into the tanks ahead of the break or from those at points nearer the destination. The tanks along the pipe line differed from the tanks in Crawford county, in that the latter tanks were for the storage of the oil as it was collected from the producer in that county and from them the oil began its transit east.

In *Burlington Lumber Co.* v. *Willetts, supra,* a lumber company located at Burlington, Iowa, left a quantity of

saw-logs in a harbor or bayou on the Illinois side of the Mississippi river for safe keeping until needed and had leased the land along the shore and employed an agent to take care of them, and on objection to the assessment of taxes against such logs it was held that they had acquired a situs in Illinois and were subject to taxation in this State. It was claimed in that case that the logs were in transit and not taxable in this State. The rule is there laid down that if property, while in the course of transportation over navigable rivers, is detained by low water or ice, or any other natural cause of detention, it is not subject to taxation by local taxing authorities where the detention occurred, but if stored for the convenience of the owner, to be further transported later, it is not then in transit but acquires a situs subjecting it to taxation.

In *Brown* v. *Houston,* 114 U. S. 622, and *Pittsburg Coal Co.* v. *Bates,* 156 id. 577, coal was held taxable in Louisiana which had been shipped there for sale by its owner, who lived in Pennsylvania, and which was lying on flat-boats at the wharf. In the latter case the boats had not reached their ultimate possible destination but were being held on the Mississippi river subject to the orders of the owner to be sent to the place of sale, and were so held as a matter of convenience. It was held in these cases that as this property was not delayed in transit through any incident to transportation it had become mingled with the mass of property of the State of Louisiana, and was therefore subject to taxation by local taxing authorities.

In *People* v. *Bacon, supra,* grain being shipped from the west was billed through Chicago for eastern points. At Chicago it was removed from the train by the purchaser to an elevator for inspection. It was held that an assessment of taxes levied against it while in this private elevator was valid, as the grain was not at that time in interstate commerce. This view was sustained by the Supreme

Court of the United States on review. *Bacon* v. *Illinois,* 227 U. S. 504.

Appellant cites the case of *Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265, as sustaining its contention that this oil was in interstate commerce. That case was a suit to restrain the State tax commission of West Virginia from collecting a license tax from the business of transporting petroleum in pipe lines, on the ground that it was a tax on interstate commerce. That line did a business of transporting oil from points in West Virginia and Pennsylvania to points within and beyond West Virginia, mingling the various oils turned into it. It was held that it was engaged in interstate commerce, and that a license tax on the business of transporting oil was in that case invalid as a burden on interstate commerce. In *Railroad Com.* v. *Worthington,* 225 U. S. 101, also cited by appellant, the Ohio State tax commission attempted to fix a rate for the transportation of what is known as "cargo coal" by lake steamers. This rate was held void in that case as a burden on interstate commerce.

*Coe* v. *Errol, supra,* was a petition for the abatement of taxes levied on certain spruce logs that had been cut and drawn to the Androscoggin river, in New Hampshire, to be thereon later floated down to Lewiston, Maine, and were awaiting a convenient opportunity for such transportation. It was objected that these logs were in transit from one State to another; that the Androscoggin river was a public highway from the State of New Hampshire into the State of Maine, and the question there considered was whether the products of a State are liable to be taxed like other property of the State though intended for transportation into another State and partially prepared for that purpose by being deposited at a place of shipment, such products being owned by persons residing in another State. The court, speaking through Mr. Justice Bradley, said: "This question does not present the predicament of goods

in course of transportation through a State though detained for a time within the State by low water or other causes of delay, as was the case of the logs cut in the State of Maine, the tax on which was abated by the Supreme Court of New Hampshire. Such goods are already in the course of commercial transportation and are clearly under the protection of the constitution; and so, we think, would the goods in question be when actually started in the course of transportation to another State or delivered to a carrier for such transportation. There must be a point of time when they cease to be governed exclusively by the domestic law and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose in which they commence their final movement for transportation from the State of their origin to that of their destination. When the products of the farm or the forest are collected and brought in from the surrounding country to a town or station serving as an entrepot for that particular region, whether on a river or a line of railroad, such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the State to the State of their destination or have started on their ultimate passage to that State. Until then it is reasonable to regard them as not only within the State of their origin but as a part of the general mass of property of that State, subject to its jurisdiction and liable to taxation there."

The facts in the *Coe case* are not unlike the case at bar. There the logs of the forests of the State of New Hampshire had been cut and prepared for shipment and were awaiting convenient facilities and opportunity for that purpose; here the oil had been drawn from the ground and amassed in the tanks of appellant at Stoy but had not yet started on its final transportation to New Jersey, and it seems reasonable to hold that such property does not cease

to be a part of the general mass of property in this State subject to taxation by local taxing authorities until its shipment to another State has actually started in a continuous route or journey. The fact of the intention of the parties to ship it out of the State can be of little avail. Were it shown by the record that the oil flowed in a constant stream through these tanks at Stoy into the lines east, or was interrupted only because of breaks in those lines, it could not be questioned that the oil was in transit when going through the tanks in question. But as the oil was stored there when purchased from the producer, to be held until needed or until it could be conveniently taken care of at Bayonne, it seems equally clear that the oil had not started in transit.

This oil was subject to taxation by the local taxing authorities of Crawford county, and the State tax commission did not err in so holding. The finding of that commission will therefore be affirmed.     *Finding affirmed.*