475 P.2d 45

**ALBUQUERQUE MOVING AND STORAGE COMPANY, Inc., Appellant,**

**v.**

**COMMISSIONER OF REVENUE, Appellee.**

**No. 461.**

Court of Appeals of New Mexico.

July 17, 1970.

Rehearing Denied Sept. 14, 1970.

Certiorari Denied Oct. 15, 1970.

Malcolm W. deVesty, Franks & de-Vesty, Irwin S. Moise, Sutin, Thayer & Browne, Albuquerque (on rehearing), for appellant.

James A. Maloney, Atty. Gen., Santa Fe, John C. Cook, Special Asst. Atty. Gen., for appellee.

## OPINION

SPIESS, Chief Judge.

This is an appeal from a decision and order of the Commissioner of Revenue imposing a gross receipts tax upon receipts derived by the Taxpayer, Albuquerque Moving and Storage Company, Inc., from certain services rendered by it during the year 1968. Ch. 47, [1966] Laws of N.M. p. 184 (repealed 1969), is applicable to these transactions. The facts are stipulated. Taxpayer is a New Mexico corporation having its place of business at Albuquerque, New Mexico. In the course of its business it renders certain transportation and related services, some of which are intrastate in nature and others are interstate.

While engaged in interstate service Taxpayer does so as a franchised representative of United Van Lines of Fenton, Missouri. United Van Lines is authorized to transport household goods in interstate commerce. The stipulation includes examples of typical cases respecting which the Taxpayer rendered the particular services for which the receipts involved were subjected to tax by the Commissioner. The typical cases include transportation of household goods from out of state to Albuquerque by a civilian and like transportation by the United States for an officer in the military service.

Before further reference is made to these cases we think it is appropriate to say that the tax was imposed by the Commissioner upon receipts for services rendered by the Taxpayer in the handling, storage and local drayage of the household goods. In the civilian case the goods were transported to the consignee at the address of the Taxpayer, Albuquerque Moving and Storage Company, and in the military case the property was consigned to the officer at Albuquerque, New Mexico, and delivery was made to the Taxpayer at its address for handling, storage and local drayage.

The typical civilian case involved the transportation of property from San Diego, California, to Albuquerque, New Mexico, by a shipper who had been transferred by his company from San Diego to Albuquerque. At the time the goods were transported the shipper did not have a home in Albuquerque and, therefore, wished to have his goods stored in Albuquerque until he found a home. The goods were transported to Albuquerque and placed in storage in Taxpayer's warehouse until the shipper gave notice to transport them to his new home in Albuquerque. The shipper, in this case, paid the transportation charges from San Diego to Albuquerque, handling charges for preparing the goods for storing in Albuquerque, storage charges and local drayage charges for transporting the goods to his new home in Albuquerque. Each of these charges was

made pursuant to a tariff filed by United Van Lines with and approved by the Interstate Commerce Commission.

In the typical military case an officer was transferred by the United States Marine Corps from a camp in North Carolina to Kirkland Air Force Base, Albuquerque, New Mexico. The transportation officer at the North Carolina camp secured transportation of the officer's household goods through United Van Lines to Albuquerque. Since the final destination address had not been ascertained a provision was contained in the bill of lading and freight bill for storage in transit up to ninety days. These household goods were transported to Albuquerque and delivered to the Taxpayer. Taxpayer held the goods in storage until notified of the officer's address and they were then delivered to him at such address. In this instance the United States government paid not only the transportation charges but Taxpayer's charges for storage, handling and drayage to the officer's home. Each of the charges are made pursuant to a tariff filed by United Van Lines with and approved by the Interstate Commerce Commission.

In both cases transportation, storage, handling and local drayage were provided for and charges specified under a single contract. The total receipts upon which the tax was imposed resulted from services rendered in instances substantially identical to the typical cases. In neither instance did Taxpayer include the fees received for handling, storage and drayage in its gross receipts tax return, nor did it pay gross receipts tax thereon. As stated, the effect of the Commissioner's decision and order from which the appeal is taken is to impose the gross receipts tax upon receipts derived from these services.

The Taxpayer, in substance, takes the position that these receipts are deductible from gross receipts upon which the tax is imposed in accordance with Ch. 47, § 14(I) [1966] Laws of N.M. p. 198 [§ 72–16A–14(I), N.M.S.A. 1953, (Repl. Vol. 10 Supp. 1967)], which is as follows:

"Receipts from transporting persons or property under a single contract from one point to another in this state may be deducted from gross receipts when such persons or property, including any special or extra service reasonably necessary in connection therewith, is being transported in interstate or foreign commerce."

It is further argued that the goods involved were in interstate commerce until delivered to the consignee's home and a tax upon receipts for the particular services to the goods while in interstate commerce runs afoul of the commerce clause of the federal Constitution.

Implicit in the decision of the Commissioner is the finding that upon arrival of the household goods at Taxpayer's warehouse they ceased to be in interstate commerce.

This court's scope of judicial review of a decision and order of the Commissioner of the Bureau of Revenue is expressed [§ 72–13–39(C), N.M.S.A. 1953, (Supp.1969)], as follows:

"Upon appeal, the court shall set aside a decision and order of the commissioner only if found to be (1) arbitrary, capricious or an abuse of discretion, (2) not supported by substantial evidence in the record, or (3) otherwise not in accordance with law."

The determinative question before us is whether the Commissioner's finding is warranted by the stipulated facts. If so, none of the stated grounds upon which the decision and order may be set aside are present and the Commissioner's action must be affirmed.

It is undisputed that if the goods involved were not in interstate commerce when the services respecting them were rendered the receipts from such services would not be deductible under Ch. 47, § 14(I), [1966], Laws of N.M., nor would

they be subject to the protective effect of the commerce clause.

The general and accepted rule in such cases supported by substantial authority is expressed in 171 A.L.R. 283 at 284:

"It is universally agreed that personal property actually in transit in interstate commerce is protected by the commerce clause of the Federal Constitution from local taxation in the states through which it passes. Where, however, the interstate transit is broken or interrupted in a particular state, the question arises whether the property may thereupon be subjected to local taxation therein. In this situation the principle has been adopted by the Supreme Court of the United States and adhered to by the lower Federal courts and the courts of the various states that if the break in the interstate journey was caused by the exigencies or conveniences of the chosen means of transportation, considerations of the safety of the goods during transit, or natural causes over which the taxpayer has no control, the continuity of the transit remains unimpaired, and the immunity of the goods from state or local taxation is consequently unaffected; but if the interruption in the journey occurred for purposes connected with the business convenience or profit of the taxpayer, or the owner of the property, then the continuity of the transit must be regarded as having been so disturbed as to destroy the immunity of the property from local taxation."

See Independent Warehouses, Inc. v. Scheele, 331 U.S. 70, 67 S.Ct. 1062, 91 L. Ed. 1346 (1947); Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933).

In considering a like question the Supreme Court of the United States in Minnesota v. Blasius, supra, said:

"* * * If the interstate movement has begun, it may be regarded as continuing, so as to maintain the immunity of the property from state taxation, de-spite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement. Coe v. Errol [116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715], supra; Kelley v. Rhoads, 188 U.S. 1, 23 S.Ct. 259, 47 L.Ed. 359; Champlain [Realty] Co. v. [City of] Brattleboro, 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309, 25 A.L.R. 1195. Formalities, such as the forms of billing, and mere changes in the method of transportation, do not affect the continuity of the transit. The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied. Champlain [Realty] Co. v. [City of] Brattleboro, supra, 260 U.S. 377, 43 S.Ct. 146, 67 L.Ed. 309, 25 A.L.R. 1195; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L. Ed. 310; Texas & N.O.R.R. Co. v. Sabine Tram Co., 227 U.S. 111, 33 S.Ct. 229, 57 L.Ed. 442; Carson Petroleum Co. v. Vial [279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626], supra. The mere power of the owner to divert the shipment already started does not take it out of interstate commerce if it appears 'that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in futherance of the intended transportation.' Hughes Bros. Co. v. Minnesota, 272 U.S. 469, 476, 47 S.Ct. 170, 172, 71 L.Ed. 359.

"Where property has come to rest within a state, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the state and is thus subject to its taxing power. * * *"

Clearly, under the stipulated facts the interruption in the interstate transportation was not caused by exigencies or conven-

iences of the chosen means of transportation, or considerations of the safety of the goods during transit, or natural causes over which the owner has no control. The interruption, however, did occur for purposes connected with the convenience of the owner of the property and it was held by the taxpayer at the pleasure of the owner for local shipment as his interest dictated.

Through application of these rules it is our conclusion that the finding of the Commissioner upon which the tax was imposed was amply supported by the stipulated facts.

We have considered the taxpayer's contention that the transactions involved should be treated as exempt " * * * due to the fact that there has been long standing administrative interpretation of and legislative history concerning the applicable statutes to the effect that the gross receipts tax was not applicable to the type of transactions in question."

In our opinion there is no merit to this contention for the reason that the administrative interpretation of legislative acts and the legislative acts to which we are referred relate to goods or activities in interstate commerce. This was the issue involved here, and, as stated, the supportable finding was to the effect that the goods ceased to be in interstate commerce when delivery was made to the taxpayer.

It follows that the gross receipts derived from services rendered in the handling, storage and local drayage of the household goods under the circumstances were not deductible in computing gross receipts tax payable to the State or City of Albuquerque.

The Commissioner's decision and order is affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.