Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The ground of exemption claimed by the bill in this case, so far as not disposed of by the case of
 
 Railroad, Company
 
 v.
 
 McShane,
 
 just decided, reste upon the allegation that the costs of selecting, surveying, and conveying the lands had not been paid at the time of their assessment for taxes of the year 1872, these being the taxes in dispute. In regard to this ground, we find ourselves embarrassed by two very troublesome questions, if their solution is essential to a decision of the case, as was assumed in the argument.
 

 1. What is the latest period at which, by the laws of Nebraska, the right to assess lands for taxation can be exercised for any given year?
 

 2. What are the costs of selecting and conveying the
 
 *476
 
 lands of these railroad companies, mentioned in the third section of the act of 1864 ?
 

 As the latter question is one to be solved by the acts of Congress or by the rules and regulations of the land department, it would seem an appropriate one for a Federal court to answer.
 

 But the lands granted to railroads generally by acts of Congress are the alternate sections on each side of the road within a certain limit, and, therefore, when the surveys are made and the line of the road laid down by protraction through these surveys, the sections and parts of sections are at once, determined; and there is no choice or selection to be made.
 

 It is true that by some statutes, and especially by the one granting the lands in question, where it is found that any odd section which would otherwise go to the company has been disposed of or pre-empted, the company may take other lands in place of it, and this it may select wij:hin certain distances from the road. But the selection, in such case is made by the company, and it is difficult to imagine what costs the government incurs in the selection which is to be paid by the company “into the Treasury of the United States.” These lands thus selected in lieu of others also are such small part of the whole grant that the costs of selection could not amount to much, and the record in the case does not enable us to determine wbjt particular parcels are of this character.
 

 The act of July 1st, 1864, enacts that the register and receiver of the land office in which the lands granted to States and corporations for railroad and other purposes are located, are entitled to receive from such corporations a fee of one dollar for each final location of one hundred and sixty acres, to be accounted for as other fees are, with limitations of maximum salary prescribed by law.
 

 Counsel for the appellant insists that these are the costs of selection referred to in the twenty-first section of the act of Congress of 1864. But those costs were to be paid into the treasury, and these are to be paid to the registers and
 
 *477
 
 receivers. Unless these officers receive fees beyond the maximum salary allowed to them, these fees would not go into the treasury, and certainly are not paid into it by the company, as that act requires the costs to be paid to which it refers.
 

 Again, these fees are to be paid on all the lands located, which may fairly be construed to be all the lands ascertained to belong to the company under a grant, while the costs spoken of in the twenty-first section are the costs of
 
 selection,
 
 which can properly apply only to lands where a choice or option employing exercise of judgment has been used. Still, as these are the only costs or expenses which counsel on either side has been able to suggest as the costs of selecting the lands within the meaning of the statute, it is unsafe to say, they are not the costs referred to.
 

 There is equal uncertainty about what is meant by the costs of conveying the lands by the government. The conveyance is by patent, and we have been shown no statute which authorizes a charge or fee for issuing the patent, nor was counsel ou either side able to refer us to any such, though both were familiar with the operations of the land department in the West.
 

 Turning from this difficulty to the question of the time to which the taxability of property, real or personal, relates under the laws of Nebraska, we find an equal embarrassment. No decision of any court of that State has been made on the subject. No language of the revenue laws of the State fixes such a time expressly.
 

 The provisions contained in General Act 907
 
 *
 
 are all the provisions we have been able to find bearing on the question, and they are far from conclusive. In regard to personal property, the first of March seems to be adopted as a criterion to determine who shall pay the tax, and what county shall receive it when it has changed locality or ownership during the year and before the tax is levied. This may also
 
 *478
 
 be the reason of fixing the lien of the tax on land on the same day, that vendor and vendee may have a rule to determine upon whom the burden shall fall. But from this time until the State board of equalization on the fourth Monday in May acts finally upon it, the assessment of property both real and personal is in progress and is incomplete, and the final levy of the tax does not take place until July. In the absence of any day or time fixed decisively by the statute or clearly deducible from it, and of any decision of any court of the State on the subject,, or of any long and well-settled practice by the State authorities, we hesitate to say that when land is only exempt from taxation by .reason of the claims upon it of the Federal government, and those claims are satisfied before the final proceedings are concluded, it would not be included in that assessment. In such case not half the current year for which the taxes are levied has expired. The general matter of assessment or valuation for taxation is still within the control of the proper officers, and if it is brought to their knowledge that the full ownership of the lands has passed from the United States to individuals or corporations it would seem equitable that they should bear their share of the burden of taxation.
 

 We are the more inclined not to interfere in this case by the extraordinary remedy of injunction, because it is shown that as to all these lands, not only had all dues to the United States been paid before the final action of the State board of equalization, but patents had issued for all of them before this suit was brought. At the time, therefore, of filing this bill to prevent the collection of taxes on account of the interest of the United States in the lands on which they were levied, the United States had no interest in the land which would forbid their being taxed; nor is it clear that they had an}' when the lands were assessed. The costs of surveying were paid before even the precinct assessors assessed these lands, as the3T then thought they had a right to do, and it is extremely uncertain whether any costs of selecting or conveying the lands within the meaning of the act of Congress existed or were unpaid.
 

 
 *479
 
 Under all the circumstances, without deciding that there is any particular day to which by the laws of Nebraska the liability for taxation of real estate must always be referred, or if there be, what that day is, we affirm the decree of the Circuit Court dismissing the bill in this case.
 

 Decree affirmed.
 

 *
 

 Set out
 
 supra,
 
 pp. 468, 469. — Rep.