## PORTER v. SOUTH OMAHA PACKING CO.
### Civ. No. 665.

District Court, D. Nebraska, Omaha Division.

June 19, 1946.

---

Dwight W. Dahlman, Atty., OPA, of Omaha, Neb., for plaintiff.

Ben Kaslow, of Omaha, Neb., for defendant.

DONOHOE, District Judge.

The Price Administrator, hereinafter referred to as the plaintiff, brings this action under the Emergency Price Control Act of 1942, 56 Stat. 23, as amended, 50 U.S.C.A.Appendix, § 901 et seq. against the South Omaha Packing Company, a division of the First National Stores, Incorporated, for a permanent injunction restraining the defendant from violating Section 4(a) of the Act, and the provisions of Maximum Price Regulation No. 574, as amended, establishing maximum prices for live bovine animals.

After setting forth that the defendant is a corporation having one of its principal places of business in Omaha, Douglas County, Nebraska, and that the defendant is there engaged in the business of slaughter-

ing, packing, processing and selling beef and veal carcasses, beef and veal wholesale cuts, and ground beef at wholesale, the amended complaint continues by alleging that:

"Defendant has violated said Act and the above mentioned implementing Regulation, as amended, in that: (1) During the accounting period from April 2, 1945, to April 28, 1945, both dates inclusive, the defendant slaughtered or caused to. be slaughtered at its slaughtering establishment in Omaha, Nebraska, 3,212 head of live bovine animals weighing 3,173,640 pounds, live weight, all of which were purchased by actual weight and slaughtered within thirty days of purchase, and in violation of Section 2 of said Regulation, it paid for the same, including transportation charges to its said slaughtering establishment, the sum of $446,303.84, which amount was in excess of the maximum permissible drove cost therefor ($444,876.40) determined in the manner provided by Section 9 (b) and (c) of said Regulation, as amended, to the extent of $1,427.44.

"The grades of the said quantity of live bovine animals slaughtered by the defendant during the period above mentioned, the live weight thereof, the top range price therefor, and the maximum permissible amount payable for the same as determined in the manner prescribed by said Regulation are as follows:

tached hereto and marked 'Exhibit C', with the Regional Office of the Office of Price Administration (226 West Jackson Boulevard, Chicago, Illinois) and containing the information thereby requested relative to the cost of bulls purchased and slaughtered by it within thirty days of purchase as required by Section 9 (c) (3) and Section 10 (a) (5) of said Regulation, as amended."

It is charged that the defendant's violations of the Act and Regulation, as amended, contribute directly to economic instability and inflation, and are detrimental to the stabilization of the national economy.

The plaintiff also alleges that, in view of the defendant's past conduct, the plaintiff believes that the defendant will continue to operate its slaughtering establishment in violation of the Act and Regulation unless restrained by a final injunction or order of the court.

The amended complaint concludes with a prayer for a permanent injunction, or order in the nature thereof, enjoining and restraining the defendant from paying a total amount, including transportation to its slaughtering establishment, for all live bovine animals slaughtered by it within 30 days of purchase, during any accounting period, in excess of the permissible amount determined in the manner provided by Section 9 (b) and (c) of Maximum Price Regulation No. 574, as amended. The prayer

| Grades | Live Weight | Top Range Price | Maxium Permissible Amount Payable |
|---|---|---|---|
| AA | 464307 | $16.65 | $ 77,307.12 |
| A | 1681926 | 15.35 | 258,175.64 |
| B | 635461 | 12.60 | 80,068.09 |
| C | 212570 | 10.60 | 22,532.42 |
| D | 69896 | 7.85 | 5,486.84 |
| (Cutter & Canner Bulls) Cutter & Canner | 14355 | 9.10 | 1,306.30 |
| | 3078515 | | $444,876.41 |

(2) The defendant during the accounting period mentioned in paragraph (1) above failed to file a separate report on Form DS–T–55, Revised, a copy of which is at-

also includes a request that the defendant be permanently enjoined from violating any of the provisions of the Regulation, as amended, and for such other relief as may

be just and equitable, and that the costs of the action be taxed against the defendant.

The case has been tried to the court, and the court makes the following special

## Findings of Fact

1. The defendant, South Omaha Packing Company, a division of the First National Stores, Incorporated, is and was at the times mentioned in the amended complaint, engaged in the business of buying live cattle at the Union Stockyards in Omaha, Nebraska, and, as a non-processing wholesale slaughterer, is and was engaged in selling beef in carcass form.

2. The cattle purchased by the defendant are slaughtered by it within 30 days from the date on which they are purchased.

3. Except for sales of beef to the government, the defendant does not sell beef locally, but ships all of its products to stores located in the eastern part of the United States.

4. All of the cattle purchased by the defendant during its accounting period from April 2, 1945, to April 28, 1945, were purchased in a competitive market by W. L. Fredericks, the defendant's buyer.

5. During the defendant's accounting period from April 2, 1945, to April 28, 1945, the defendant purchased and slaughtered at its slaughtering establishment in Omaha, Nebraska, 3,212 head of cattle, for which the defendant paid, including transportation charges to its slaughtering establishment, the sum of $446,303.84.

6. Under Maximum Price Regulation No. 574, as amended, the maximum permissible drove cost payable for the 3,212 head of cattle purchased and slaughtered by the defendant during its accounting period from April 2, 1945, to April 28, 1945, was $444,-876.40.

7. The defendant violated Maximum Price Regulation No. 574, as amended, by paying the sum of $1,427.44 in excess of the defendant's maximum permissible drove cost for cattle purchased and slaughtered by the defendant during its accounting period from April 2, 1945, to April 28, 1945.

8. The violation of Maximum Price Regulation No. 574, as amended, by the defendant was not wilful or intentional, but resulted from the fact that some of the cattle, when slaughtered, failed to grade out as the defendant in good faith thought that they would grade.

## Discussion

The question is whether, under the circumstances of this case, the Price Administrator is at this time entitled to a permanent injunction against a non-processing wholesale slaughterer of beef, where the slaughterer has violated Maximum Price Regulation No. 574, as amended, by paying a sum of $1,427.44 in excess of its maximum permissible drove cost during one accounting period involving the purchase and slaughter of cattle costing nearly one-half million dollars.

All of the evidence is to the effect that the violation was not wilful, and that the defendant's buyer, W. L. Fredericks, was well qualified through 16 years of experience in buying and selling cattle in the Omaha markets. It is shown that at all times he attempted to use his best judgment. There is no evidence that the defendant violated the Regulation, either before or since the accounting period now in question, and it appears that the instant violation may be attributed to honest mistake or error in human judgment as between the defendant and the government graders working in the defendant's plant with respect to how cattle will be graded after they have been slaughtered. According to the defendant's calculations, the total amount of non-compliance for the month of April, 1945, was less than 9/10 of 1%, measured by the standards expressed in the regulation.

A number of cases, mostly unreported, in the district courts have been cited by the plaintiff in support of its position that an injunction should be granted in the present case. An examination of the cited opinions discloses that the bulk of these cases involved either more than one violation or overpayments ranging up to 11% or more in excess of the maximum permissible amount. Many of the cases involved a combination of both of these factors.

An injunction is an extraordinary and harsh remedy, Hunnewell v. Cass County, 89 U.S. 464, 22 Wall. 464, 22 L.Ed.

752, and will ordinarily be granted only in a clear case and where the necessity therefor is clearly established. United States v. Honolulu Consol. Oil Co., D.C.Cal. 249 F. 167; United States v. Rogles, D.C.Mo., 9 F.Supp. 857. It is the general rule that the granting of an injunction is discretionary with the trial court, Morris v. Williams, 8 Cir., 149 F.2d 703; Caterpillar Tractor Co. v. International Harvester Co., 9 Cir., 106 F.2d 769; and that an injunction looks to the future, Douglas v. City of Jeannette, 319 U.S. 157, at page 165, 63 S.Ct. 877, 87 L.Ed. 1324, and is designed to prevent or deter future injuries or non-compliance with the law. Bowles v. Minish, D.C.Ala., 56 F.Supp. 153; Donnelly Garment Co. v. Dubinsky, D.C.Mo., 55 F.Supp. 587; Bowles v. Lentin, 7 Cir., 151 F.2d 615.

Section 205 (a) of the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C. A. Appendix, § 925 (a), provides: "(a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act (section 904 of this Appendix), he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

■ Whether an injunction shall be granted under Section 205 (a) in cases involving non-wilful violations of the Act, and regulations promulgated thereunder, is a matter in which the district court may exercise some discretion. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L. Ed. 754.

The Hecht case was a suit by the Price Administrator for an injunction to restrain the defendant from violating price regulations. Quoting from the opinion at page 322 of 321 U.S., at page 588 of 64 S.Ct., 88 L.Ed. 754, the court said: "The question in this case is whether the administrator, having established that a defendant has engaged in acts or practices violative of § 4 of the Act is entitled as of right to an injunction restraining the defendant from engaging in such acts or practices or whether the court has some discretion to grant or withhold such relief."

In the Hecht case, the answer pleaded, among other things, that any failure or neglect by the defendant to comply with the regulations was involuntary and was corrected as soon as discovered.

The Supreme Court, while adding that it was not to be implied that courts should administer Section 205(a) grudgingly, said at pp. 327 and 328 of 321 U.S., at page 591 of 64 S.Ct., 88 L.Ed. 754:

"We agree that the cessation of violations, whether before or after the institution of a suit by the Administrator, is no bar to the issuance of an injunction under § 205(a). But we do not think that under all circumstances the court must issue the injunction or other order which the Administrator seeks.

"It seems apparent on the face of § 205 (a) that there is some room for the exercise of discretion on the part of the court. For the requirement is that a 'permanent or temporary injunction, restraining order, or other order' be granted. Though the Administrator asks for an injunction, some 'other order' might be more appropriate, or at least so appear to the court."

In conclusion, 321 U.S. at page 330, 64 S.Ct. at page 592, 88 L.Ed. 754, the court said: "Hence we resolve the ambiguities of § 205(a) in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect."

The court added, however, that the standards of the public interest, not the requirements of private litigants, measure the propriety and need for injunctive relief in these cases, and that the court's discretion should reflect an acute awareness of the Congressional admonition that "of all the consequences of war, except human slaughter, inflation is the most destructive."

■ In view of the fact that the instant violation involves but one accounting period and an excess payment of only $1,427.44

on the purchase of cattle costing nearly one-half million dollars, the fact that the violation was not wilful or the result of careless and reckless disregard of the Regulation, and the fact that there is no showing that the defendant has violated the Regulation during other accounting periods, or that there is a present need for an injunction to prevent future violations, it is concluded that a proper exercise of the Court's discretion calls for the denial of a permanent injunction against the defendant at this time.

Some of the grounds upon which the defendant relies for the denial of relief will now be noted with very brief separate comment thereon.

The defendant contends that the method of determining the maximum permissible cost of cattle, as set forth in Section 9 of the Regulation, is so vague, indefinite, arbitrary and capricious as to make it impossible to conform consistently therewith because there is no natural person so expert as to be able to exactly determine just what live cattle purchased on the hoof will grade after slaughtering and processing. It is also asserted that the conversion factors for determining the dressed weight equivalents of live weights of cattle, as set forth in Section 13 of the Regulation, is arbitrary, discriminatory and speculative, resulting in artificial standards which influence the permissible cost of cattle formula under the Regulation.

■ While the court is fully aware of the difficulties which may be encountered by the defendant in complying with the Regulation, such difficulties do not of themselves constitute a basis for denying relief to the plaintiff in this case. See Bowles, Administrator etc. v. J. L. Jones, dba T. A. Jones & Sons, D.C.Ky.[1] Likewise, the fact that the defendant may have acted in good faith is not a complete defense. Brown Administrator etc. v. Hecht Co., 78 U.S.App.D.C. 98, 137 F.2d 689, reversed on other grounds, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754. Insofar as the defendant's contentions may be construed as an attack upon the validity of the Regulation, and the provisions thereof, it is suffi-

cient to say that it has been conclusively established that this is not the proper forum for such attack. 50 U.S.C.A.Appendix, § 924(d); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

The defendant leans heavily upon the theory of "de minimis non curat lex", stressing the fact that the total amount of non-compliance for the month of April, 1945, consisted of less than 9/10 of 1% measured by the standards expressed in the Regulation. Without intimating as to what extent, if any, the triviality of the defendant's violation should influence the court in the exercise of its discretion with respect to granting or denying injunctive relief, it may be pointed out that contentions similar to those now urged by the defendant have been considered and rejected by the courts in other similar cases. Bowles, Price Administrator etc. v. David Bernstein, Inc., D.C.N.Y., 66 F.Supp. 361; Bowles, Administrator, etc., v. Ormesher Bros., a partnership, etc., D.C.Neb.—Chadron Division, 65 F.Supp. 791.

The defendant has interposed a general attack upon the constitutionality of the Act and Regulation. This charge necessitates only the slightest discussion, since, as previously pointed out, the district court has no jurisdiction to consider these contentions.

■ That the overpayment of $1,427.44 has caused a reduction to the defendant in the amount of its subsidy payments from the government, and that such reduction may have been absorbed by the defendant, does not justify or mitigate the effect of the violation of the Regulation now in question.

■ Lastly, the defendant contends that what may have been appropriate drastic war measures in April, 1945, may no longer be appropriate now after the cessation of hostilities.

This argument carries no persuasive effect. In the first place, one of the primary purposes for the enactment of the Emergency Price Control Act was to stabilize prices and prevent inflation. See 50 U.S.C.A.Appendix, § 901(a). Furthermore, the end of hostilities seems to have increased

---

[1] No opinion.

rather than minimized the dangers at which the Act was aimed, and, as stated in Bowles, Administrator, etc., v. Ormesher Bros., a partnership, etc., supra [65 F.Supp. 793]: "The state of war persists; only its international slaughter has ended—or, it may be, has been suspended. Many—in fact most—of the incidents of warfare continue. More to the point, however, the determination of the existence and persistence of the emergency, in the present context at least, is a legislative function, not the task of the judiciary. And the congress has not seen fit, either generally to declare the end of the emergency, or specifically to terminate the operation of the act. In fact, it is presently engaged in the actual extension of its effective operation. Counsel must bear in mind the elastic provisions of the act itself (Title 50 U.S.C.A.App. § 901(b), whereby its contemplated operative period may be diminished either by presidential proclamation or by concurrent resolution of the two houses of the congress. No comparable grant of power is bestowed upon the judiciary."

### Conclusions of Law

A permanent injunction will at this time be denied without prejudice to the right of the Administrator, on notice, to renew his application for injunctive relief in the event of future violations by the defendant. Bowles v. Albert Glauser, Inc., D.C. Mo., 61 F.Supp. 428; Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754. The court will retain jurisdiction of the action until further order.